IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY | : |
| Plaintiff | : |
| VS. | : CIVIL ACTION NO. |
| | : |
| RODOLFO CARDENAS d/b/a RC DRYWALL | : 12-2804 |
| Defendant | : |

## ORDER

AND NOW, this _____ day of _____, 2012, upon consideration

of Movants, Smucker Company and Paramount Contracting, Inc.'s, Motion for Joinder as

Indispensable Parties pursuant to Federal Rule of Civil Procedure 19, and any Response thereto, it is

hereby ORDERED that said Motion is GRANTED, and Smucker Company and Paramount

Contracting, Inc. are joined as party-Defendants to this action.

BY THE COURT:

_____
                                                    J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY | : |
| Plaintiff | : |
| VS. | : CIVIL ACTION NO. |
| | : |
| RODOLFO CARDENAS d/b/a RC DRYWALL | : 12-2804 |
| Defendant | : |

## **ORDER**

AND NOW, this _____ day of _____, 2012, upon consideration

of Movants, Smucker Company and Paramount Contracting, Inc.'s, Motion to Intervene pursuant to

Federal Rule of Civil Procedure 24(b)(1)(B), and any Response thereto, it is hereby ORDERED that

said Motion is GRANTED, and Smucker Company and Paramount Contracting, Inc. are permitted

to intervene in the above-referenced action as party-Defendants.


BY THE COURT:


_____

                                                     J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY | : | |
| Plaintiff | : | |
| VS. | : | CIVIL ACTION NO. |
| | : | |
| RODOLFO CARDENAS d/b/a RC DRYWALL | : | 12-2804 |
| Defendant | : | |

## SMUCKER COMPANY AND PARAMOUNT CONTRACTING, INC.'S MOTION FOR JOINDER AS INDISPENSABLE PARTIES PURSUANT TO F.R.C.P. 19

Pursuant to Fed. R.Civ.P. 19(a), Movants, Smucker Company and Paramount Contracting, Inc. respectfully request this Court to determine that they are indispensable parties to the above-referenced action, and join them as party-Defendants to this action.

In the alternative, pursuant to Fed. R.Civ.P. 24(b)(1)(B), Movants request this Honorable Court's permission to intervene in the above-referenced action as party-Defendants.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: _Mark T Riley_

MARK T. RILEY, ESQUIRE
ATTORNEY FOR DEFENDANTS
Smucker Company and Paramount Contracting, Inc.
Identification Nos.: 49427
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8259; 354-8498 Fax: (610) 354-8299
mtriley@mdwcg.com

Date: 9-28-12

26/2060603.v1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY | : | |
| Plaintiff | : | |
| VS. | : CIVIL ACTION NO. | |
| | : | |
| RODOLFO CARDENAS d/b/a RC DRYWALL | : 12-2804 | |
| Defendant | : | |

## SMUCKER COMPANY AND PARAMOUNT CONTRACTING, INC.'S BRIEF IN SUPPORT OF MOTION FOR JOINDER AS INDISPENSABLE PARTIES PURSUANT TO F.R.C.P. 19

### I.      PROCEDURAL HISTORY OF CASE

On May 22, 2012, Plaintiff, Hartford Casualty Insurance Company ("Hartford") filed a

Declaratory Judgment Complaint against Defendant, Rodolfo Cardenas d/b/a RC Drywall ("Mr.

Cardenas").   Thereafter, on June 29, 2012, Hartford filed an Amended Declaratory Judgment

Complaint against Mr. Cardenas.   Neither Movants, Smucker Company and Paramount Contracting,

Inc., nor their counsel, were advised by Hartford or Mr. Cardenas' counsel in the underlying action

that Hartford filed the within Declaratory Judgment action.   Movants, through their counsel, became

aware of the Declaratory Judgment Complaint and Amended Declaratory Judgment Complaint on

or about September 18, 2012.

Upon information and belief, Mr. Cardenas has yet to be served with the Amended

Declaratory Judgment Complaint.

### II.      STATEMENT OF FACTS

On March 4, 2010, Mr. Zern was employed by the general contractor on a construction

project in Lancaster, Pennsylvania.   On that date, Lupe Carbajal and Leonardo Garcia were

installing drywall approximately 28' above an archway, at which time they allegedly dropped a 4' x 6' sheet of drywall on to Mr. Zern. As a result of being struck by the drywall, Mr. Zern was injured.

Mr. and Mrs. Zern filed a lawsuit in the Court of Common Pleas of Lancaster County, Pennsylvania, seeking damages from various contractors working at the construction site. A copy of Mr. and Mrs. Zern's Amended Complaint, filed in the Court of Common Pleas of Lancaster County, Pennsylvania, is attached hereto and marked as Exhibit "A". In that action, Movants were named as Defendants.

## III.  STATEMENT OF QUESTIONS INVOLVED

Whether Smucker Company and Paramount Contracting, Inc., Defendants in a pending State Court personal injury action, have an interest in the within Declaratory Judgment action that requires that they be joined as indispensable parties, pursuant to Fed. R.Civ.P. 19 to protect their interests?

Suggested Answer:   Yes.

Whether Smucker Company and Paramount Contracting, Inc., Defendants in a pending State Court personal injury action against Defendant, have an interest in the within Declaratory Judgment action such that they should be granted permission to intervene as party Defendants, pursuant to Fed. R.Civ.P. 24 to protect that interest?

Suggested Answer:   yes.

## IV.  ARGUMENT

### JOINDER AS INDISPENSABLE PARTIES

The resolution of the issue raised in Movants' Motion for Joinder as Indispensable Parties Pursuant to Federal Rule of Civil Procedure 19 is controlled by the <u>Federal Kemper Insurance Company</u>, 807 F.2d 345 (3d Cir. 1986), <u>American Automobile Insurance Company v. Murray</u>, 658

F.3d 311 (3d Cir. 2011), and <u>Brotherhood Mutual Insurance Company v. Salem Baptist Church of Jenkintown</u>, 2012 U.S. Dist. LEXIS 59981 (E.D. Pa. April 30, 2012) decisions.[1]

Movants, Smucker Company and Paramount Contracting, Inc. adopt and incorporate herein by reference the Brief filed by Brian D. Zern and Lynette L. Zern in support of their Motion for Joinder as Indispensable Parties to this Declaratory Judgment action pursuant to Fed. R.Civ.P. 19. Movants rely upon the case decisions cited in Zerns' Brief in Support of their Motion for Joinder as Indispensable Parties in this matter. Attached hereto and marked as Exhibit "B" is a copy of Zerns' Brief in support of their Motion for Joinder as Indispensable Parties Pursuant to Fed.R.Civ.P. 19.

Clearly, Movants, Smucker Company and Paramount Contracting, Inc., have an interest in this Declaratory Judgment action, since they are Defendants in the underlying action in which RC Drywall is a co-Defendant. It appears that, in bringing this Declaratory Judgment action, Hartford sought to extinguish the interest of Smucker Company and Paramount Contracting, Inc., as well as the interest of the Zerns in the insurance policy issued by Hartford to RC Drywall, without Movants learning of it until after the fact. Movants, as well as the Zerns, have a substantial interest in the determination of whether Hartford has an obligation to defend and/or indemnify Mr. Cardenas d/b/a RC Drywall. That interest cannot be protected if Movants are not parties to the within action, especially since Mr. Cardenas has not appeared or represented in this Declaratory Judgment action to date.

Movants are citizens of Pennsylvania and, as such, their joinder as Defendants in this action will not deprive this Court of subject matter jurisdiction or venue.

---

[1] <u>Liberty Mutual Insurance Company v. Treesdale, Inc.</u> 419 F.3d 216 (3d Cir. 2005) decision is inapplicable to the resolution of the present issue because "it dealt solely with the standard for intervention under Fed. R.Civ.P. 24, and altogether failed to address the principle of standing." <u>Murray</u> 658 F.3d at 318 n.4.

**V.  MOTION OF SMUCKER COMPANY AND PARAMOUNT CONTRACTING, INC., TO INTERVENE IN DECLARATORY JUDGMENT ACTION**

Smucker Company and Paramount Contracting, Inc., by and through their attorneys, file the within Motion to Intervene in the above-noted Declaratory Judgment Action and aver as follows:

1.  Smucker Company and Paramount Contracting, Inc., hereby move this Honorable Court for permission to intervene as Parties in the above-noted Declaratory Judgment Action in which Hartford Casualty Insurance Company seeks to withdraw from the defense of Defendant, Rodolfo Cardenas d/b/a RC Drywall and seeks a declaration that it has no obligation to indemnify Rodolfo Cardenas d/b/a RC Drywall and his business in the lawsuit captioned Brian D. Zern, et al. v. Smucker Company, Paramount Contracting, Inc., et al., Civil Action No. 10-15805 (C.P. Lancaster) ("underlying action" UNA) based upon the alleged breach of duty to cooperate by Rodolfo Cardenas d/b/a RC Drywall.

**THE PARTIES**

2.  Smucker Company and Paramount Contracting, Inc., are Pennsylvania corporations/entities with principal places of business located in Smoketown, Pennsylvania, and Lancaster, Pennsylvania, respectively.

3.  Smucker Company and Paramount Contracting, Inc., are Defendants in the underlying action captioned: Brian Zern v. Smucker Company, Paramount Contracting, Inc., et al., which CNA is presently pending in the Court of Common Pleas of Lancaster County, Pennsylvania. The underlying action is a personal injury action brought by Brian Zern alleging joint and several liability against all Defendants including RD Drywall and Your Intervenors.

4.  Pursuant to Rule 24(b)(1)(B), Intervenors, Smucker Company and Paramount Contracting, Inc., have claims or defenses that share with the main action, noted above, a common

question of law or fact and interest that would be greatly prejudiced by the granting of Plaintiff, Hartford's request to withdraw its defense and coverage from Rodolfo Cardenas d/b/a RC Drywall.

5.    Defendant, Rodolfo Cardenas, insured by Harford Casualty Insurance Company, is a Defendant herein and the target of liability in the underlying action brought by Brian Zern.

6.    Both Plaintiff, Brian Zern, and Intervenors, Smucker Company and Paramount Contracting, Inc., have claims/crossclaims against Rodolfo Cardenas d/b/a RC Drywall in the underlying action and would be greatly prejudiced by Hartford's withdrawal from the defense and indemnification of Rodolfo Cardenas d/b/a RC Drywall. Further, since joint and several liability is alleged by Plaintiff, Brian Zern against all Defendants in the underlying action, the withdrawal from the defense and obligation to indemnify by Hartford of Rodolfo Cardenas d/b/a RC Drywall would result in the shifting of liability and collection of any judgment/verdict against Rodolfo Cardenas d/b/a RC Drywall upon the other Defendants in the underlying action, including Smucker Company and Paramount Contracting, Inc.

7.    Upon information and belief, the liability of Rodolfo Cardenas d/b/a RC Drywall in the underlying action may be proven with or without the participation of them in it. Further, upon information and belief, there may a language barrier with Rodolfo Cardenas that may contribute to any alleged lack of cooperation by him with Hartford Casualty Insurance Company.

## JURISDICTION AND VENUE

8.    In its Complaint, Plaintiff alleged that this Honorable Court has original jurisdiction over the above-noted declaratory judgment action based upon 28 U. S. C. §1332(a) and 28 U. S. C. §2201, et seq. In that regard, Plaintiff alleged that this action involves a controversy between citizens of different states and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

9.     In its Complaint, Plaintiff alleged that pursuant to U. S. C. §1391(a), and upon information and belief, venue is proper in this District, as a substantial part of the events or omissions giving rise to this claim occurred in this District.

10.     Intervenors, Smucker Company and Paramount Contracting, Inc., seek permissive intervention in the above noted matter pursuant to Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure in that they have a claim or defense that shares with the main action a common question of law or fact and interest that would be greatly prejudiced by the granting of Plaintiff (Hartford's) request to withdraw its defense and its obligation to insures/indemnify Rodolfo Cardenas, d/b/a R. C. Drywall, in the above noted matter.

11.     Intervenors, Smucker Company and Paramount Contracting, Inc., are Co-Defendants, along with Rodolfo Cardenas, d/b/a R. C. Drywall,  and others in the underlying action pending in the Court of Common Pleas of Lancaster County, Pennsylvania.  As such, your Intervenors would be directly prejudiced by the withdrawal of the defense and coverage for Rodolfo Cardenas d/b/a RC Drywall and respectfully request permission to intervene in the above noted action and to respond to Hartford's allegations against Rodolfo Cardenas, d/b/a R. C. Drywall, in the above noted matter.

## THE UNDERLYING ACTION

12.     Brian and Lynette Zern filed a Civil Action in the Court of Common Pleas of Lancaster County, Pennsylvania, which is presently pending there, alleging that a number of individuals/entities were responsible jointly and/or severely for causing injuries to him on a construction project which occurred on March 4, 2010.

13. The Zerns allege that Lupe Carbajal and Leonardi Garcia were installing drywall approximately twenty-eight feet above an archway and dropped a piece of drywall onto Brian Zern, twenty-eight feet below, causing serious injury to him.

14. The Zerns allege, and, upon information and belief, RC Drywall has admitted, that Carbajal and Garcia were employees of Rodolfo Cardenas, d/b/a R. C. Drywall, or another Defendant in the action, Jessup Drywall.

15. Clearly, Rodolfo Cardenas, d/b/a R. C. Drywall, is the target Defendant and is alleged to be primarily responsible for the injuries to Brian Zern based on the vicarious liability of its employees, Carbajal and Garcia.

16. Upon information and belief, Carbajal and Garcia are Hispanic-speaking individuals and may or do have a language barrier in understanding and/or speaking English.

17. The Zerns allege joint and several liability against all Defendants in the underlying action. Accordingly, if a target Defendant, Rodolfo Cardenas, d/b/a R. C. Drywall, is rendered uninsured by the granting of this Declaratory Judgment Action by Hartford, then the Zerns could collect any verdict amount for which R. C. Drywall is responsible from the other Co-Defendants, including your Intervenors, Smucker Company and Paramount Contracting, Inc., should any liability against them be established.

18. Accordingly, great prejudice would result to your Intervenors if Hartford is permitted to withdraw its defense and obligation to insure and indemnify Rodolfo Cardenas, d/b/a R. C. Drywall, in the above noted matter.

19. Attached hereto and marked as Exhibit "A" is a copy of the Amended Complaint by the Zerns in the underlying action which is currently pending in the Court of Common Pleas of

Lancaster County, Pennsylvania. Further, a non-binding mediation is presently scheduled to take place in that underlying action on October 26, 2012.

## BRIEF OF SMUCKER COMPANY AND PARAMOUNT CONTRACTING, INC. IN SUPPORT OF THEIR MOTION TO INTERVENE IN DECLARATORY JUDGMENT ACTION

20.    Your Intervenors, Smucker Company and Paramount Contracting, Inc., incorporate herein by reference paragraphs 1 thru 19, inclusive, as fully as though the same were herein set forth at length.

21.    Pursuant to Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure, your Intervenors, Smucker Company and Paramount Contracting, Inc., respectfully request This Honorable Court's permission to intervene in the above-noted Declaratory Judgment action by Hartford seeking to withdraw its defense and coverage from Defendant, Rodolfo Cardenas, d/b/a R. C. Drywall.

22.    Your Intervenors are Defendants in the underlying action, along with Rodolfo Cardenas, d/b/a R. C. Drywall, and others brought to Brian Zern alleging personal injuries caused by the joint and several liability of all Defendants in the underlying action.

23.    The underlying Civil Action is presently pending in the Court of Common Pleas of Lancaster County, Pennsylvania, and was filed there on December 28, 2010. A non-binding mediation is presently scheduled to take place in the underlying action on October 26, 2012.

24.    The Pennsylvania Supreme Court "has consistently held that where claims are asserted against an insured, the persons asserting the claims are indispensible parties in a declaratory judgment action on the issue of coverage between the insured and the insurance carrier. The failure to join a claimant shoes interests would be affected has been held to be fatal error."

*Township of Pleasant, Warren County v. Erie Insurance Exchange*, 348 A.2d 477 (Pa. Cmwlth. 1975); *Allstate Ins. Co. v. Stinger*, 163 A.2d 74, 76 (Pa. 1960).

25.     Specifically, your Intervenors are Defendants, along with Defendant herein, RC Drywall, in the underlying action brought by Brian Zern for personal injuries alleged to have been caused jointly and/or severally by all Defendants including your Intervenors, the Defendant in this Declaratory Judgment Action (Rodolfo Cardenas d/b/a RC Drywall) and others.

26.     As stated above, Rodolfo Cardenas d/b/a RC Drywall is a main/target Defendant in the underlying action in which Plaintiff Zern alleges that employees of Defendant, RC Drywall, dropped a sheet of drywall to the area 28' below where they were working, which struck Plaintiff and seriously injured him.

27.     No prejudice will result to Plaintiff Hartford in this Declaratory Judgment Action from this Honorable Court granting permission to your Intervenors to intervene in this matter.

28.     Similarly, notwithstanding Plaintiff, Hartford's, allegation of lack of cooperation from its insured, Rodolfo Cardenas d/b/a RC Drywall, counsel appointed by Hartford to represent RC Drywall in the underlying action has participated on behalf of RC Drywall through extensive discovery and pleadings, including numerous depositions, in the underlying action.  Further, on behalf of RC Drywall, Hartford, through its appointed counsel representing RC Drywall, has secured information from numerous other sources concerning the happening of the accident and the involvement of the two drywall employees allegedly employed by RC Drywall.

29.     In short, no prejudice has resulted to Hartford Insurance Company from any alleged lack of cooperation on behalf of its insured.

30.     Your Intervenors submit that great prejudice will result to them by the granting of Hartford's request to withdraw from the defense of Rodolfo Cardenas d/b/a RC Drywall and to

withdraw their obligation to insure and indemnify Rodolfo Cardenas d/b/a RC Drywall. Specifically, if Hartford is permitted to withdraw its coverage and defense of its insured, then your Intervenors and other Defendants in the underlying action would be forced to pay any judgment/verdict against RC Drywall should your Intervenors be found jointly and severally liable in the underlying action.

31.     Additionally, your Intervenors request permission to intervene in the Declaratory Judgment Action in order to respond to the allegations in the Declaratory Judgment Action.

32.     Further, there is no Federal question or Federal interest promoted by this Honorable Court entertaining the instant Declaratory Judgment Action, which could be more appropriately determined in State Court, where all interested parties in the underlying action could participate.

33.     Further, Hartford can properly provide a defense in the underlying action despite its claim of lack of cooperation from Cardenas and has properly presented its defense based upon written discovery, numerous depositions already taken and factual investigation, which has been completed and has been ongoing since the initiation of the underlying lawsuit on December 28, 2010.

34.     Additionally, Hartford, through its counsel appointed to represent Rodolfo Cardenas d/b/a RC Drywall, has also participated in the sharing of defense damage experts jointly retained by all Defendants in the underlying action and, therefore, has not been prejudiced in the underlying lawsuit.

35.     Your Intervenors request permission to intervene in this action and to submit its position that Hartford should not be allowed to withdraw its defense and obligation to insure Rodolfo Cardenas d/b/a RC Drywall.

**WHEREFORE**, your Intervenors respectfully request this Honorable Court's permission to intervene and respond to the instant Declaratory Judgment Action and to request that it be dismissed, with prejudice.

## VI.    <u>CONCLUSION</u>

Movants, Smucker Company and Paramount Contracting, Inc., have a real and substantial interest in the Declaratory Judgment action filed by Hartford. Their interests cannot be protected by any person who is presently a Defendant to the Declaratory Judgment action. In that regard, it is respectfully requested that this Honorable Court join them as Defendants in this action pursuant to Fed.R.Civ.P. 19(a)(2), or, in the alternative, that this Court grant permission to them to intervene pursuant to Fed. R.Civ.P. 24(b)(1)(B).

Respectfully submitted,

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: _Mark T. Riley_____

MARK T. RILEY, ESQUIRE
ATTORNEY FOR DEFENDANTS
Smucker Company and Paramount Contracting, Inc.
Identification Nos.: 49427
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8259; 354-8498 Fax: (610) 354-8299
mtriley@mdwcg.com

Date: 9-28-12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY | : | |
| Plaintiff | : | |
| VS. | : | CIVIL ACTION NO. |
| | : | |
| RODOLFO CARDENAS d/b/a RC DRYWALL | : | 12-2804 |
| Defendant | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date I sent a true and correct copy of the foregoing document, Smucker Company and Paramount Contracting, Inc.'s Motion for Joinder as Indispensable Parties , or in the alternative, Motion to Intervene, upon the following persons and in the manner indicated below.

Kent D. Mikus, Esquire
Mikus Law Associates, P.C.
1623 Lampeter Road
Lancaster, PA  17602

Lawrence J. Bistany, Esquire
White and Williams, LLP
1800 One Liberty Place
Philadelphia, PA  19103

Gregory McNamee, Esquire
Richard Godshall, Esquire
Segal McCambridge Singer & Mahoney
1818 Market Street, Suite 2600
Philadelphia, PA  19103

David E. Edwards, Esquire
White and Williams, LLP
1800 One Liberty Place
Philadelphia, PA  19103

Rodolfo Cardenas, d/b/a
RC Drywall
1138 Pine Street
Easton, PA    18042

Warren E. Voter, Esquire
William M. Brennan, Esquire
SWEENEY, SHEEHAN AND SPENCER
1515 Market Street, 19th Floor
Philadelphia, PA 19102

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: _s Mark T. Riley_____
     MARK T. RILEY, ESQUIRE
     ATTORNEY FOR DEFENDANTS
     Smucker Company and Paramount Contracting, Inc.
     Identification Nos.: 49427
     620 Freedom Business Center, Suite 300
     King of Prussia, PA 19406
     (610) 354-8259; 354-8498 Fax: (610) 354-8299
     mtriley@mdwcg.com

Date: 9-28-12

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA
## CIVIL ACTION – LAW

BRIAN D. ZERN and LYNETTE
L. ZERN,

        Plaintiffs
        vs.

SMUCKER COMPANY, PARAMOUNT
CONTRACTING, INC., JESSUP DRYWALL
SERVICES, LLC,

        Defendants
        vs.

RODOLFO CARDENAS d/b/a
RC DRYWALL,

        Additional Defendant

No.: 10-15805

JURY TRIAL DEMANDED

### AMENDED COMPLAINT

#### Parties

1.    Plaintiffs, Brian D. Zern and Lynette L. Zern (hereinafter "Mr. and Mrs. Zern") are adult individuals who reside at 480 Bentzel Road, Shermans Dale, Pennsylvania 17090.

2.    Defendant, Smucker Company (hereinafter "Smucker Company") is a Pennsylvania limited liability corporation with a principal place of business located at 2445 Old Philadelphia Pike, Smoketown, Pennsylvania 17576.

3.    Defendant, Paramount Contracting, Inc. (hereinafter "Paramount") is a Pennsylvania corporation with a principal place of business located at 219 Witmer Road, Lancaster, Pennsylvania 17602.

1



EXHIBIT
"A"

4.    Defendant, Jessup Drywall Services, LLC (hereinafter "Jessup Drywall") is a Pennsylvania limited liability corporation with a principal place of business located at 18 Amoroso Lane, Pottstown, Pennsylvania 19464.

5.    Additional Defendant, Rodolfo Cardenas, is an adult individual doing business as RC Drywall (hereinafter "Cardenas") with a principle place of business located at 1138 Pine Street, Easton PA 18042.

<u>Operative Facts</u>

6.    On March 4, 2010, R.S. Mowery & Sons, Inc. (hereinafter "R.S. Mowery") was the general contractor for the construction of a church known as The Worship Center (hereinafter "The Project") located at 2384 New Holland Pike, Lancaster, Pennsylvania 17601.

7.    On March 4, 2010, Mr. Zern was employed by R.S. Mowery.

8.    Prior to March 4, 2010, R.S. Mowery subcontracted drywall work on The Project to Smucker Company.

9.    Prior to March 4, 2010, Smucker Company sub-subcontracted portions of its drywall work on The Project to Paramount.

10.    Prior to March 4, 2010, Smucker Company sub-subcontracted portions of its drywall work on The Project to Jessup Drywall.

11.    In the alternative to paragraph 10, above, prior to March 4, 2010, Paramount sub-subcontracted portions of its drywall work on The Project to Jessup Drywall.

2

12.  Lupe Carbajal (hereinafter "Mr. Carbajal") is an adult individual whose present address is unknown to Mr. and Mrs. Zern.

13.  Leonardo Garcia (hereinafter "Mr. Garcia") is an adult individual whose present address is unknown to Mr. and Mrs. Zern.

14.  On March 4, 2010, Mr. Carbajal was employed by Jessup Drywall to work on The Project and was acting within the course and scope of his employment for, and was furthering the business interest of, Jessup Drywall while performing work on The Project.

15.  In the alternative to paragraph 14, on March 4, 2010, Mr. Carbajal was employed by Cardenas to work on The Project and was acting within the course and scope of his employment for, and was furthering the business interest of Cardenas while performing work on The Project.

16.  On March 4, 2010, Mr. Garcia was employed by Jessup Drywall to work on the Project and was acting within the course and scope of his employment for, and was furthering the business interest of, Jessup Drywall while performing work on The Project.

17.  In the alternative to paragraph 16, on March 4, 2010, Mr. Garcia was employed by Cardenas to work on The Project and was acting within the course and scope of his employment for, and was furthering the business interest of Cardenas while performing work on The Project.

18.     At approximately 2:30 p.m. on March 4, 2010, Mr. Carbajal and Mr. Garcia were installing drywall approximately twenty-eight (28) feet above an archway in the stage area of the church.

19.     As Mr. Carbajal and Mr. Garcia were installing the drywall, they dropped a four (4) feet by six (6) feet sheet of drywall weighing approximately fifty (50) pounds.

20.     The four (4) feet by six (6) feet sheet of drywall fell approximately twenty-eight (28) feet and struck Mr. Zern on the left shoulder.

21.     As a result of being struck by the four (4) feet by six (6) feet sheet of drywall, Mr. Zern sustained serious and permanent injuries as hereinafter described.

## COUNT I
## BRIAN D. ZERN v. SMUCKER COMPANY
## NEGLIGENCE

22.     Plaintiffs incorporate herein by reference paragraphs 1-21 of their Complaint as if set forth in full.

23.     While performing its work on The Project, Smucker Company acted by and through its employees, agents and/or representatives who acted within the scope of their employment for Smucker Company and/or their express and/or apparent authority as employees, agents and/or representatives of Smucker Company.

24.     Smucker Company owed a duty of care to Mr. Zern to enact and enforce safety rules and regulations on The Project and to ensure that all sub-

4

subcontractors hired by it on The Project performed their work in a manner that did not cause harm to other workers on The Project, including Mr. Zern.

25.     Smucker Company, in its individual capacity, and through the actions and inactions of its employees, agents and/or representatives, breached its duty of care to Mr. Zern and its breach of duty to Mr. Zern was a factual cause of the aforementioned accident.

26.     The negligence and carelessness of Smucker Company, in its individual capacity, and through the actions and inactions of its employees, agents and/or representatives, consisted of the following acts, and failures to act:

a.     Failing to determine if the drywall sub-subcontractors who worked on The Project were competent and that they would comply with accepted safety practices, including those safety practices related to protection of persons from falling objects;

b.     Failing to adopt, enforce and monitor a safety program that required the drywall sub-subcontractors to comply with applicable OSHA regulations, including 29 CFR §1926.501(c); and,

c.     Failing to adopt a safety program for drywall installers at The Project to protect others from falling objects.

27.     Smucker Company's negligent and careless conduct was a factual cause of Mr. Zern suffering serious and permanent personal injury including, without limitation, the following injuries:

a.     Severe left brachial plexus injury with avulsion of the C7, C8 and T1 nerve roots;

5

b.   Significant pseudosubluxation of left glenohumeral joint;

c.   Left clavicle fracture;

d.   Left 1st, 2nd, and 3rd rib fractures;

e.   Left scapular fracture extending across the base of the left acromion;

f.   Left distal humerus fracture;

g.   Left radius fracture;

h.   Left lung contusion;

i.   Left apical pneumothorax with a pleural hematoma;

j.   Cardiac contusion;

k.   Left kidney contusion;

l.   Partial left-sided Horner's syndrome;

m.   Abrasions and contusions to the soft tissue and muscles of the left shoulder and upper torso;

n.   Injuries to the nerves of the neck, upper back, left shoulder and left arm and hand; and

o.   Any additional injuries identified in the medical records or to be determined.

28.   Smucker Company is liable to Mr. Zern for the following damages and losses, which are hereby claimed in this action:

a.   The injuries and damages as set forth in the preceding paragraph;

b.   Past and future medical expenses;

c.   Past loss of earnings and future loss of earning capacity;

d.   All other past and future economic damages recoverable by

6

law;

e.    Past and future pain and suffering, embarrassment and
      humiliation, loss of the ability to enjoy the pleasures of life and
      disfigurement; and

f.    All other past and future non-economic damages
      recoverable by law.

WHEREFORE, Plaintiff, Brian D. Zern hereby demands judgment against

Defendant, Smucker Company, jointly and severally with Paramount

Contracting, Inc., Jessup Drywall Services, LLC, and Rodolfo Cardenas d/b/a RC

Drywall in an amount in excess of $50,000.00 together with interest, costs and

delay damages as authorized by law.

### COUNT II
### BRIAN D. ZERN v. PARAMOUNT CONTRACTING, INC.
### NEGLIGENCE

29.    Plaintiffs incorporate herein by reference paragraphs 1- 28 of their

Complaint as if set forth in full.

30.    While performing its work on The Project, Paramount acted by and

through its employees, agents and/or representatives who acted within the

scope of their employment for Paramount and/or their express and/or apparent

authority as employees, agents and/or representatives of Paramount.

31.    Paramount was contractually obligated to provide supervision:

a.    For the drywall hanging performed at the Project by
      employees of Cardenas including Mr. Carbajal and Mr.
      Garcia; and

b.    For the workers needed to complete the drywall hanging that
      was performed under the Subcontract that it entered into with

Smucker Company on March 17, 2009, a copy of which is attached hereto, incorporated herein and marked Exhibit "A".

32. With regard to work they performed at the Project, Mr. Carbajal and Mr. Garcia were subject to the control of Paramount.

33. Paramount is vicariously liable for the negligence of Mr. Carbajal and Mr. Garcia.

34. The negligence and carelessness of Mr. Carbajal and Mr. Garcia consisted of the following acts, and failures to act:

    a.    Negligent handling of the drywall panel that fell twenty-eight (28) feet and struck Mr. Zern;

    b.    Dropping the drywall panel that fell twenty-eight (28) feet and struck Mr. Zern;

    c.    Failure to comply with accepted safety practices including those safety practices related to protection of persons from falling objects; and,

    d.    Failure to comply with applicable OSHA regulations, including 29 CFR §1926.501(c).

35. Paramount owed a duty of care to Mr. Zern to enact and enforce safety rules and regulations on The Project and to ensure that all sub-subcontractors hired and/or supervised by it on The Project performed their work in a manner that did not cause harm to other workers on The Project, including Mr. Zern.

36.    While performing its work on The Project, Paramount acted by and through its employees, agents and/or representatives who acted within the scope of their employment for Paramount and/or their express and/or apparent authority as employees, agents and/or representatives of Paramount.

37.    Paramount, in its individual capacity, and through the actions and inactions of its employees, agents and/or representatives, breached its duty of care to Mr. Zern and its breach of duty to Mr. Zern was a factual cause of the aforementioned accident.

38.    The negligence and carelessness of Paramount, in its individual capacity, and through the actions and inactions of its employees, agents and/or representatives, consisted of the following acts, and failures to act:

a.    Failing to determine if the drywall sub-subcontractors who worked on The Project were competent and understood and would comply with accepted safety practices, including those safety practices related to protection of persons from falling objects;

b.    Failing to adopt, enforce and monitor a safety program that required the drywall sub-subcontractors to comply with applicable OSHA regulations, including 29 CFR §1926.501(c);

c.    Failing to adopt a safety program for drywall installers at The Project to protect others from falling objects; and,

d.    Failing to provide adequate supervision of and control over the work performed at the Project by Mr. Carbajal and Mr. Garcia.

39.   Paramount's negligent and careless conduct was a factual cause of Mr. Zern suffering serious and permanent personal injury including, without limitation, the following injuries:

a.   Severe left brachial plexus injury with avulsion of the C7, C8 and T1 nerve roots;

b.   Significant pseudosubluxation of left glenohumeral joint;

c.   Left clavicle fracture;

d.   Left 1st, 2nd, and 3rd rib fractures;

e.   Left scapular fracture extending across the base of the left acromion;

f.   Left distal humerus fracture;

g.   Left radius fracture;

h.   Left lung contusion;

i.   Left apical pneumothorax with a pleural hematoma;

j.   Cardiac contusion;

k.   Left kidney contusion;

l.   Partial left-sided Horner's syndrome;

m.   Abrasions and contusions to the soft tissue and muscles of the left shoulder and upper torso;

n.   Injuries to the nerves of the neck, upper back, left shoulder and left arm and hand; and

o.   Any additional injuries identified in the medical records or to be determined.

40. Paramount is liable to Mr. Zern for the following damages and losses, which are hereby claimed in this action:

    a. The injuries and damages as set forth in the preceding paragraph;

    b. Past and future medical expenses;

    c. Past loss of earnings and future loss of earning capacity;

    d. All other past and future economic damages recoverable by law;

    e. Past and future pain and suffering, embarrassment and humiliation, loss of the ability to enjoy the pleasures of life and disfigurement; and

    f. All other past and future non-economic damages recoverable by law.

WHEREFORE, Plaintiff, Brian D. Zern hereby demands judgment against Defendant, Paramount Contracting, Inc., jointly and severally with Smucker Company, Jessup Drywall Services, LLC, and Rodolfo Cardenas d/b/a RC Drywall in an amount in excess of $50,000.00 together with interest, costs and delay damages as authorized by law.

**COUNT III**
**BRIAN D. ZERN v. JESSUP DRYWALL SERVICES, LLC**
**NEGLIGENCE**

41. Plaintiffs incorporate herein by reference paragraphs 1- 40 of their Complaint as if set forth in full.

42. While performing its work on The Project, Jessup Drywall acted by and through its employees, agents and/or representatives who acted within the scope of their employment for Jessup Drywall and/or their express and/or

11

apparent authority as employees, agents and/or representatives of Jessup Drywall.

43.     Jessup Drywall owed a duty of care to Mr. Zern to ensure that it performed its work on The Project in a manner that did not cause harm to Mr. Zern.

44.     Jessup Drywall owed a duty of care to Mr. Zern to enact and enforce safety rules and regulations on The Project and to ensure that all sub-subcontractors hired and/or supervised by it on The Project performed their work in a manner that did not cause harm to other workers on The Project, including Mr. Zern.

45.     Jessup Drywall, in its individual capacity, and through the actions and inactions of its employees, agents and/or representatives, breached its duty of care to Mr. Zern and its breach of duty to Mr. Zern was a factual cause of the accident as aforementioned.

46.     The negligence and carelessness of Jessup Drywall, in its individual capacity, and through the actions and inactions of its employees, agents and/or representatives, consisted of the following acts, and failures to act:

     a.    Failing to determine that the drywall installers that it sent to work on The Project were competent and that they understood and would comply with accepted safety practices especially as those safety practices related to protection of persons from falling objects;

     b.    Failing to supply drywall installers who were competent and who understood and who would comply with accepted safety practices including those safety practices related to protection of persons from falling objects;

    c.    Failing to adopt, enforce and monitor a safety program that required the drywall installers that it sent to work on The Project to comply with applicable OSHA regulations, including 29 CFR §1926.501(c);

    d.    Failing to adopt a safety program for drywall installers at The Project to protect persons from falling objects; and,

    e.    Failing to provide adequate supervision of and control over the work performed at the Project by Mr. Carbajal and Mr. Garcia.

47.    Jessup Drywall is vicariously liable for the negligence of Mr. Carbajal and Mr. Garcia.

48.    The negligence and carelessness of Mr. Carbajal and Mr. Garcia consisted of the following acts, and failures to act:

    a.    Negligent handling of the drywall panel that fell twenty-eight (28) feet and struck Mr. Zern;

    b.    Dropping the drywall panel that fell twenty-eight (28) feet and struck Mr. Zern;

    c.    Failure to comply with accepted safety practices including those safety practices related to protection of persons from falling objects; and,

    d.    Failure to comply with applicable OSHA regulations, including 29 CFR §1926.501(c).

49.    Jessup Drywall's negligent and careless conduct and the negligent and careless conduct of its employees were factual causes of Mr. Zern suffering serious, and permanent, personal injury including, without limitation, the following injuries:

    a.    Severe left brachial plexus injury with avulsion of the C7, C8 and T1 nerve roots;

b.      Significant pseudosubluxation of left glenohumeral joint;

c.      Left clavicle fracture;

d.      Left 1st, 2nd, and 3rd rib fractures;

e.      Left scapular fracture extending across the base of the left acromion;

f.      Left distal humerus fracture;

g.      Left radius fracture;

h.      Left lung contusion;

i.      Left apical pneumothorax with a pleural hematoma;

j.      Cardiac contusion;

k.      Left kidney contusion;

l.      Partial left-sided Horner's syndrome;

m.      Abrasions and contusions to the soft tissue and muscles of the left shoulder and upper torso;

n.      Injuries to the nerves of the neck, upper back, left shoulder and left arm and hand; and

o.      Any additional injuries identified in the medical records or to be determined.

50.      Jessup Drywall is liable to Mr. Zern for the following damages and losses, which are hereby claimed in this action:

a.      The injuries and damages as set forth in the preceding paragraph;

b.      Past and future medical expenses;

c.      Past loss of earnings and future loss of earning capacity;

    d.      All other past and future economic damages recoverable by law;

    e.      Past and future pain and suffering, embarrassment and humiliation, loss of the ability to enjoy the pleasures of life and disfigurement; and

    f.      All other past and future non-economic damages recoverable by law.

WHEREFORE, Plaintiff, Brian D. Zern hereby demands judgment against Defendant, Jessup Drywall Services, LLC, jointly and severally with Smucker Company, Paramount Contracting, Inc., and Rodolfo Cardenas d/b/a RC Drywall in an amount in excess of $50,000.00 together with interest, costs and delay damages as authorized by law.

### COUNT IV
### BRIAN D. ZERN v. RODOLFO CARDENAS d/b/a RC DRYWALL
### NEGLIGENCE

51.    Plaintiffs incorporate herein by reference paragraphs 1- 50 of their Complaint as if set forth in full.

52.    While performing its work on The Project, Cardenas acted by and through his employees, agents and/or representatives who acted within the scope of their employment for Cardenas and/or their express and/or apparent authority as employees, agents and/or representatives of Cardenas.

53.    Cardenas owed a duty of care to Mr. Zern to enact and enforce safety rules and regulations on The Project and to ensure that all of his employees performed their work at the Project in a manner that did not cause harm to other workers on The Project, including Mr. Zern.

15

54.     Cardenas, in his individual capacity, and through the actions and inactions of his employees, agents and/or representatives, breached his duty of care to Mr. Zern and its breach of duty to Mr. Zern was a factual cause of the accident as aforementioned.

55.     The negligence and carelessness of Cardenas, in his individual capacity, and through the actions and inactions of his employees, agents and/or representatives, consisted of the following acts, and failures to act:

  a. Failing to determine that the Mr. Carbajal and Mr. Garcia were competent and that they understood and would comply with accepted safety practices especially as those safety practices related to protection of persons from falling objects;

  b. Failing to supply drywall installers who were competent and who understood and who would comply with accepted safety practices including those safety practices related to protection of persons from falling objects;

  c. Failing to adopt, enforce and monitor a safety program that required the drywall installers that it sent to work on The Project to comply with applicable OSHA regulations, including 29 CFR § 1926.501(c);

  d. Failing to adopt a safety program for drywall installers at The Project to protect persons from falling objects; and,

  e. Failing to provide adequate supervision of and control over the work performed at the Project by Mr. Carbajal and Mr. Garcia.

56.     Cardenas is vicariously liable for the negligence of Mr. Carbajal and Mr. Garcia.

57.     The negligence and carelessness of Mr. Carbajal and Mr. Garcia consisted of the following acts, and failures to act:

   a.   Negligent handling of the drywall panel that fell twenty-eight (28) feet and struck Mr. Zern;

   b.   Dropping the drywall panel that fell twenty-eight (28) feet and struck Mr. Zern;

   c.   Failure to comply with accepted safety practices including those safety practices related to protection of persons from falling objects; and,

   d.   Failure to comply with applicable OSHA regulations, including 29 CFR §1926.501(c).

58.     Cardenas' negligent and careless conduct and the negligent and careless conduct of his employees were factual causes of Mr. Zern suffering serious, and permanent, personal injury including, without limitation, the following injuries:

   a.   Severe left brachial plexus injury with avulsion of the C7, C8 and T1 nerve roots;

   b.   Significant pseudosubluxation of left glenohumeral joint;

   c.   Left clavicle fracture;

   d.   Left 1st, 2nd, and 3rd rib fractures;

   e.   Left scapular fracture extending across the base of the left acromion;

   f.   Left distal humerus fracture;

   g.   Left radius fracture;

   h.   Left lung contusion;

   i.   Left apical pneumothorax with a pleural hematoma;

j.  Cardiac contusion;

k.  Left kidney contusion;

l.  Partial left-sided Horner's syndrome;

m.  Abrasions and contusions to the soft tissue and muscles of the left shoulder and upper torso;

n.  Injuries to the nerves of the neck, upper back, left shoulder and left arm and hand; and

o.  Any additional injuries identified in the medical records or to be determined.

59.  Cardenas is liable to Mr. Zern for the following damages and losses, which are hereby claimed in this action:

a.  The injuries and damages as set forth in the preceding paragraph;

b.  Past and future medical expenses;

c.  Past loss of earnings and future loss of earning capacity;

d.  All other past and future economic damages recoverable by law;

e.  Past and future pain and suffering, embarrassment and humiliation, loss of the ability to enjoy the pleasures of life and disfigurement; and

f.  All other past and future non-economic damages recoverable by law.

WHEREFORE, Plaintiff, Brian D. Zern hereby demands judgment against Defendant, Rodolfo Cardenas d/b/a RC Drywall and severally with Smucker Company, Paramount Contracting, Inc., and Jessup Drywall Services, LLC in an

amount in excess of $50,000.00 together with interest, costs and delay damages as authorized by law.

**COUNT V**
**LYNETTE L. ZERN v. SMUCKER COMPANY, JESSUP DRYWALL SERVICES, LLC,**
**AND PARAMOUNT CONTRACTING, INC.,**
**LOSS OF CONSORTIUM**

60.     Plaintiffs incorporate herein by reference paragraphs 1-59 of their Complaint as if set forth in full.

61.     At all times relevant hereto, Mrs. Zern was, and is, the wife of Mr. Zern.

62.     The negligence of Smucker Company, Jessup Drywall, and Paramount, was a factual cause in Mrs. Zern being deprived of the care, companionship, assistance, and consortium of her husband for which damages are claimed.

WHEREFORE, Plaintiff, Lynette L. Zern hereby demands judgment against Defendants, Smucker Company, Paramount Contracting, Inc., Jessup Drywall Services LLC, and Rodolfo Cardenas d/b/a RC Drywall jointly and severally, in an amount in excess of $50,000.00 together with interest, costs and delay damages as authorized by law.

MIKUS LAW ASSOCIATES, P.C.

Date: _____          By: _____
                                          Kent D. Mikus, Esquire
                                          Attorney I.D. No. 23587
                                          1623 Lampeter Road
                                          Lancaster, PA 17602
                                          (717) 464-7480
                                          Attorneys for Plaintiffs

19

**EXHIBIT A**

# SUBCONTRACT

## This Agreement, Made this 17th day of December, 2009,

Between the Subcontractor:    Paramount Contracting, Inc.
    219 Witmer Road
    Lancaster, PA 17602

And the Contractor:    Smucker Company
    2445 Old Philadelphia Pike
    Smoketown, PA 17576

The Project:    The Worship Center
The Owner:    The Worship Center, Inc.
The General Contractor:    R. S. Mowery & Sons, Inc.
The Architect:    BGW

The Contractor and Subcontractor agree as set forth below.

**1. CONTRACT DOCUMENTS:** The Contract Documents for this Subcontract consist of the Agreement and any Exhibits attached hereto, the Agreement between the General Contractor and the Contractor, the Conditions of the Contract between the General Contractor and the Contractor, Architectural Drawings dated 8/07/09 and 9/29/09 and Specifications dated 9/21/09.

**2. WORK TO BE PERFORMED:** The Subcontractor and the Contractor agree on the following scope of work:
Provide labor, tools, equipment and scaffold to hang and finish the drywall and beads for walls, ceilings, soffits and window returns as shown on the Contract Documents for the entire building (except for the portion of Faith Factory designated as Section #3).
Scope does not include fire safing or fire spray.
Provide a "lead man" for communication with Contractor's Foreman regarding scope, quality, schedule, questions for the General Contractor, etc.
All communication with General Contractor shall be processed through the Contractor's Foreman.
Clean up of work areas with scrap in piles centered in each room; Agri-Marketing will then remove the scrap from the building.
Contractor will provide:
-power lifts (if needed to efficiently install the Work)
-material (including accessory material)
-Foreman to provide overall supervision of Contractor's project scope of metal studs, drywall, insulation and acoustical. (Contractor's Foreman will not provide specific supervision for Subcontractor's Work and/or crews.)

**3. SCHEDULE OF WORK:** Time is of the essence for the Subcontractor and the Contractor. Subcontractor will perform his work with a sufficient amount of labor and material so the work can be completed as rapidly as possible and not delay or interfere with the progress of the project. For failure to commence and complete his work on time, the Subcontractor shall be subject to damages and remedies by the Contractor as set forth in other portions of this Agreement.

**4. CONSIDERATION:** The Contractor agrees to pay the Subcontractor for the performance of his work the sum of ------ ONE HUNDRED SIXTY-NINE THOUSAND TWO HUNDRED ------ 00/100 ($169,200.00) in current funds, subject to additions and deductions for such changes as may be agreed upon in writing and approved in writing by the Contractor, said sum to be paid as follows:
    (a) PROGRESS PAYMENTS: (1) The Contractor shall pay the Subcontractor monthly progress payments in the amount of 90% of the Application submitted. Applications shall be in writing and shall be submitted to the Contractor on or before the 20th day of each month for work performed through the end of the month. The 10% balance shall be held as retainage and will be paid when retainage is paid to the Contractor by the General Contractor.
(2) Unless otherwise provided in the Contract Documents, the Contractor shall pay the Subcontractor each progress payment within Seven working days after the Contractor has received payment from the General Contractor for labor and material covered in the Application submitted by the Subcontractor.
    (b) FINAL PAYMENT: (1) The final payment shall be paid by the Contractor to the Subcontractor within Seven days after the Contractor shall have received the final payment from the General Contractor.
(2) As a further condition of progress payments and final payment, the Contractor may require the Subcontractor to furnish receipted invoices for all materials incorporated into the work or placed on the job site, supported by the affidavit of the Subcontractor setting forth that all claims for labor and material have been paid, with names and addresses of all laborers and materialmen listed.
(3) No certificate given or payment made under this contract, except the final certificate or final payment shall be conclusive evidence of the performance of this contract, either wholly or in part, and no payment shall be construed to be an acceptance of defective work or improper material.

**5. SUBCONTRACTOR'S RESPONSIBILITIES:** The subcontractor agrees:



1

SMUC9001

(a) To be bound to the Contractor by the terms of this Agreement and of the Contract Documents between the General Contractor and Contractor, and shall assume toward the Contractor all the obligations and responsibilities which the Contractor, by those Documents, assumes toward the General Contractor, and shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, by those Documents, has against the General Contractor, insofar as applicable to this Subcontract, provided that where any provisions of the Contract Documents between the General Contractor and Contractor is inconsistent with any provisions of this Agreement, this Agreement shall govern.

(b) To submit to the Contractor applications for payment in such reasonable time as to enable the Contractor to apply to the General Contractor for payment.

(c) To make all claims for extras, for extensions of time and for damages for delays or otherwise, to the Contractor in writing before proceeding to execute such work.

(d) That this Subcontract shall not be assigned unless the Contractor shall first consent thereto in writing.

(e) To carry coverage and pay for the premiums for the following insurances: Worker's Compensation, Comprehensive General Liability, Automobile Liability and Excess Liability Umbrella. Subcontractor shall provide to the Contractor a certificate of insurance that names the Contractor as an ADDITIONAL INSURED. Additional insured for the Commercial General Liability shall include on-going and completed operations on a primary basis. The certificate of insurance shall be provided prior to Subcontractor commencing any work or services. Additionally the Subcontractor shall supply Contractor with a new and updated certificate of insurance on an annual basis. The minimum limits of insurance are as follows:

1. General Liability: $1,000,000 per occurrence and $3,000,000 General Aggregate
2. Auto Liability: $1,000,000 Combined Single Limit
3. WC & Employers Liability: $100,000 per/Accident $100,000 Each Employee (Disease) and $500,000 Total Policy (Disease)
4. Umbrella Liability: $3,000,000
   NOTE: GENERAL LIABILITY AGGREGATE MUST BE ON A "PER PROJECT" BASIS

(f) To pay all social security, unemployment compensation, sales or other taxes or charges assessed against the wages or salary of the Subcontractor's employees or against any materials used in the performance of this Subcontract.

(g) To indemnify the Contractor against the claims of all materialmen and employees of the Subcontractor, including Court costs and attorney's fees incurred in the defense of any litigation instituted by any officer, employee, laborer or materialmen of the Subcontractor, to which the Contractor is made a party.

(h) To furnish as a condition to obtaining payments hereunder all releases, discharges or other instruments that may be required to release the structure from any and all claims, demands, suits, or whatever kind or nature, arising out of the performance of this Subcontract.

(i) To provide adequate insurance to protect all persons not employed by the Subcontractor against claims for damages for personal injury including death, which may arise out of the performance of this Subcontract by or on account of any act or omission of said Subcontractor, its employees or agents. Certificates of such insurance shall be furnished to the Contractor.

(j) To comply with all laws, orders, or regulations of the Federal, State or Local Government or of any of their respective, subordinate agencies, departments or commissions, applicable to the performance of this Subcontract.

(k) That any work done or material furnished failing to meet the requirements of the Plans, Specifications and this Subcontract, will be removed from the premises and replaced by the Subcontractor at his expense.

(l) That no change from the Plans and Specifications shall be made, and that no extras shall be performed, unless a separate agreement in writing shall have been made before commencement of such work or the furnishing of materials.

(m) To protect and save harmless the said Contractor against any claim or demand or any persons or property for damage caused hereunder, or any claim or demand for patent fees, royalties or for any invention, machine, article or arrangement that may be used by the Subcontractor in the construction of the work, and agrees to defend any and all actions arising out of any of the foregoing claims; to notify the Contractor of all such claims; to defend it, and pay counsel fees and expenses or all kinds whatsoever in connection therewith; and the Subcontractor further agrees that in event of any injunction or legal action, serving to stop work, the Contractor shall have the privilege of substituting such other articles of similar kind in order to enable the Subcontractor to complete the work, and all costs and expense occasioned thereby shall be borne by the Subcontractor.

(n) To notify the Contractor in writing or by shop drawings of any special provisions required of the Contractor for the installation of the work to be done by the Subcontractor that are not shown on the plans and specifications in detail, in sufficient time to allow the Contractor to make these provisions as the project progresses. In the event the Subcontractor fails to so notify the Contractor, it shall be the responsibility of the Subcontractor to bear the expense for all changes required to properly install his work.

(o) Subcontractor shall be responsible for any deviations from the drawings or the specifications, unless the Subcontractor has, in writing, notified the Contractor of such deviations, giving reasons therefore, at the time of submission of preliminary or final shop drawings.

(p) To take all reasonable safety precautions with respect to his Work, to comply with all safety measures initiated by the Contractor and with all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property in accordance with the requirements of the Contract Documents. The Subcontractor shall report to the Contractor immediately any injury to any of the Subcontractor's employees at the site.

(q) That all materials and equipment furnished and incorporated by Subcontractor in the Project shall be new unless otherwise specified, and that all Work under this Subcontract shall be of good quality, free from faults and defects and in conformance with the Contract Documents. All Work not conforming to these standards may be considered defective and will be remedied to the satisfaction of the Contractor with no additional compensation to the Subcontractor. This warranty shall be for the duration of one year after completion of all work and shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents.

(r) Promptly submit shop drawings and samples as required in order to perform his work efficiently, expeditiously and in a manner that will not cause delay in the progress of the Work of the Contractor, General Contractor or other Subcontractors.

(s) To comply with all laws and regulations (local, state and federal) relating to taxes, wages, hours, overtime, record keeping, equal employment opportunity, etc. as they apply to this project, including Title VII of the Civil Rights Act of 1964; Americans with Disabilities Act; Family and Medical Leave Act; Fair Labor Standards Act and all other applicable laws, rules and regulations.

(t) To submit weekly certified payroll reports for all the work performed on this Project, if this project is subject to either Federal or State Prevailing Wage laws. These submissions are subject to approval of the General Contractor and the approved submissions are a condition precedent to receiving progress and/or final payment for the Work of this Subcontract.

(u) To submit a copy of the Subcontractor's safety program and hazard communication plan. These submissions are subject to approval of the General Contractor and the approved submissions are a condition precedent to receiving progress and/or final payment for the Work of this Subcontract.

2

(v) To provide supervision for the Work to be performed under this Subcontract.
(vi) To provide supervision for the workers needed to complete the Work to be performed under this Subcontract.
(vii) To ensure that all workers assigned to the Project by the Subcontractor are in compliance with all laws pertaining or relating to immigration and to protect and save harmless the Contractor from any claim or demand pertaining to violations of any laws pertaining or relating to immigration. Upon request, Subcontractor will provide documentation to the Contractor verifying that all workers assigned to the Project by the Subcontractor are legally eligible to work in the United States.

**6. CONTRACTOR'S RESPONSIBILITIES:** The Contractor agrees:
(a) To be bound to the Subcontractor by the terms of this agreement and of the Contract Documents between the General Contractor and the Contractor and to assume toward the Subcontractor all the obligations and responsibilities that the General Contractor, by these Documents, assumes toward the Contractor, and to have the benefit of all rights, remedies and redress against the Subcontractor which the General Contractor, by these Documents, has against the Contractor, insofar as applicable to this Subcontract, provided that where any provision of the Contract Documents between the General Contractor and the Contractor is inconsistent with any provision in this Agreement, this Agreement shall govern.
(b) To promptly notify the Subcontractor of all modifications to the Contract between the General Contractor and the Contractor which affect this Subcontract and which were issued or entered into subsequent to the execution of this Subcontract.
(c) That no claim for payment for services rendered or materials furnished by the Contractor to the Subcontractor shall be valid without prior written notice to the Subcontractor.
(d) To coordinate with the Subcontractor in scheduling and performing his Work to attempt to avoid conflicts or interference in the Subcontractor's Work.
(e) To permit the Subcontractor to be present and to submit evidence in any arbitration proceeding involving his rights.

**7. ACCEPTANCE:** The Contractor and the Subcontractor agree that:
(a) In the event the Subcontractor is not acceptable to the General Contractor for any reason whatsoever, the Contractor shall be under no obligation or responsibility to the Subcontractor, and this Subcontract shall become null and void.

**8. TERMINATION FOR FAILURE TO WORK:** Should the Subcontractor fail to prosecute the work to the satisfaction of the Contractor, or should he at any time become insolvent, or refuse to follow the Plans and Specifications, or fail to perform the work in a good and workmanlike manner, or cause by any action the stoppage of the work of other subcontractors performing work upon this property, or fail to comply in any respect with this subcontract; then, upon the happening of the foregoing events, or any one or more of them, the Subcontractor agrees that the Contractor may, by three days written notice mailed to the subcontractor at his last known residence or place of business, or notice delivered at such place, or to the foreperson in charge of the work, terminate this Subcontract and take over the work and prosecute the same to completion by contract or otherwise, and enter into and take possession of the work, materials, tools, appliances and equipment needed to complete such work, and make such payment as the Contractor deems necessary for the discharge in whole or in part of the claims, liens or claims for liens, of any person in privity with the Subcontractor on account of this Subcontract; and the Subcontractor agrees that the expense of such notice and of the completion of such work, and the amount paid for the discharge or payment on account of claims, liens, or claims for liens, and the expense thereof, shall be deducted from the amount due or to become due the Subcontractor, and if more than the amount due, then the Subcontractor shall be liable to the Contractor for the difference, and the Contractor may hold, sell or otherwise realize upon any material, machinery, tools, or other equipment upon the premises on account of such difference in case the Subcontract shall fail or refuse to pay the same; all without prejudice to any other remedy the Contractor may have. If the Subcontractor shall abandon the work, the Contractor shall be under no obligation to give any notice whatsoever prior to taking over the work.

**9. LIENS AND CLAIMS:** The Subcontractor hereby expressly waives, release and relinquishes any and all right to maintain, or have filed or maintained any mechanic's lien or claim against the aforesaid premises, or any part thereof, or any building or buildings thereon, for or on account of any work, labor and materials performed or furnished under this agreement, and agrees that no such lien or claim shall be so filed or maintained by or on behalf of the Subcontractor; and the Subcontractor further agrees to save the Contractor harmless from the lien or claim for liens against the aforesaid premises or any part thereof, or any buildings thereon, of any subcontractor, or any persons acting through or under the Subcontractor, and agrees, that if at any time there shall be any evidence of the filing or maintenance of any such lien or claim for lien, the Contractor shall have the right to deduct from the amount otherwise due the Subcontractor hereunder, and amount sufficient to indemnify it for any or all loss or damage which may result from such lien or claim; and the Subcontractor further agrees that this waiver shall be an independent covenant, and shall operate and be effective, not only with respect to materials furnished or labor performed under this subcontract, but also with respect to any materials furnished or labor performed under any subcontract supplemental to this principal subcontract, and under any subcontract for extra labor or materials for above described premises.

**10. EXCLUSIVITY:** This Document includes all the agreements between the Contractor and the Subcontractor for the specific Project named herein, and any changes hereto shall be made in writing and executed by both the Contractor and Subcontractor.

Contractor: SMUCKER COMPANY

By: _____
Stacey Brandt, Sr Project Manager

Subcontractor: Paramount Contracting, Inc.

By: _____
Jeff L. Mylin, President

3

SMUC9003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARTFORD CASUALTY INSURANCE
COMPANY,
                           Plaintiff

        v.

RODOLFO CARDENAS d/b/a
RC DRYWALL ,

                        Defendant

:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.: 12-2804

**ORDER**

       AND NOW, this _____ day of _____, 2012, upon
consideration of Movants, Brian D. Zern and Lynette L. Zern's Motion for Joinder as
Indispensable Parties Pursuant to Fed.R.Civ.P. 19, and any response thereto, it is hereby
ORDERED that said Motion is GRANTED, and Brian D. Zern and Lynette L. Zern are joined
as party-defendants to this action.

                        BY THE COURT

                        _____



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | : | |
| Plaintiff | : | CIVIL ACTION NO.: 12-2804 |
| v. | : | |
| | : | |
| RODOLFO CARDENAS d/b/a RC DRYWALL , | : | |
| | : | |
| Defendant | : | |

**BRIAN D. ZERN AND LYNETTE L. ZERN'S MOTION FOR JOINDER AS INDISPENSABLE PARTIES PURSUANT TO F.R.C.P. 19**

Pursuant to Fed.R.Civ.P. 19(a), Movants, Brian D. Zern and Lynette L. Zern request this Court to determine that they are indispensable parties to the above-referenced action and join them as party-defendants to the action.

In the alternative, pursuant to Fed.R.Civ.P. 24(b)(1)(B), Movants request this Honorable Court's permission to intervene in the above-referenced action as party-defendants.

MIKUS LAW ASSOCIATES, P.C.

Date: _9·28·12_

By: _____
Kent D. Mikus, Esquire
Attorney I.D. No. 23587
1623 Lampeter Road
Lancaster, PA 17602
(717) 464-7480
Attorney for Brian D. Zern and
Lynette L. Zern

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I sent a true and correct copy of the foregoing document, Brian D. Zern and Lynette L. Zern's Motion for Joinder as Indispensable Parties Pursuant to Fed.R.Civ.P. 19, upon the following persons as indicated below.

The foregoing document was sent by first class mail to:

David E. Edwards, Esquire
White and Williams, LLP
1650 Market Street
One Liberty Place
Suite 1800
Philadelphia, PA 19103-7395

We are attempting hand delivery to:

Roldolfo Cardenas d/b/a RC Drywall
1138 Pine Street
Easton, PA 18042

MIKUS LAW ASSOCIATES, P.C.

Date: _9·28·12_

By: _____
Kent D. Mikus, Esquire
Attorney I.D. No. 23587
1623 Lampeter Road
Lancaster, PA 17602
(717) 464-7480
Attorney for Brian D. Zern and
Lynette L. Zern

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | : | |
| Plaintiff | : | CIVIL ACTION NO.: 12-2804 |
| v. | : | |
| RODOLFO CARDENAS d/b/a RC DRYWALL , | : | |
| Defendant | : | |

**BRIAN D. ZERN AND LYNETTE L. ZERN'S BRIEF IN SUPPORT OF MOTION FOR JOINDER AS INDISPENSABLE PARTIES PURSUANT TO F.R.C.P. 19**

I.      *PROCEDURAL HISTORY OF THE CASE*

On May 22, 2012, Plaintiff, Hartford Casualty Insurance Company ("Hartford") filed a Declaratory Judgment Complaint against Defendant, Rodolfo Cardenas d/b/a RC Drywall ("Mr. Cardenas"). On June 29, 2012, Hartford filed an Amended Declaratory Judgment Complaint against Mr. Cardenas. Neither Movants, Brian D. Zern and Lynette L. Zern ("Mr. and Mrs. Zern"), nor their counsel, were advised by Hartford or Mr. Cardenas's counsel in the Underlying Action that Hartford filed the within declaratory judgment action. Mr. and Mrs. Zern's counsel was advised on September 21, 2012, by an attorney for one of the defendants in the Underlying Action that the Declaratory Judgment Complaint and Amended Declaratory Judgment Complaint were filed by Hartford.

Mr. Cardenas has yet to be served with the Amended Declaratory Judgment Complaint.

II.      *STATEMENT OF FACTS*

On March 4, 2010, Mr. Zern was employed by the general contractor on a construction project in Lancaster, Pennsylvania (¶ 15 of Hartford's Amended Declaratory Judgment Complaint). On that date, Lupe Carbajal ("Mr. Carbajal") and Leonardo Garcia ("Mr. Garcia") were installing drywall approximately twenty-eight feet above an archway (¶ 16 of Hartford's Amended Declaratory Judgment Complaint).

Mr. Carbajal and Mr. Garcia dropped a 4' by 6' sheet of drywall, weighing approximately 50 pounds, onto Mr. Zern (¶ 17 of Hartford's Amended Declaratory Judgment Complaint). As a result of being struck by the drywall, Mr. Zern sustained serious and permanent injuries to his left shoulder, clavicle, ribs, scapula, arm, lung, kidney and heart (¶17 of Hartford's Amended Declaratory Judgment Complaint).

Mr. and Mrs. Zern filed a lawsuit in the Court of Common Pleas of Lancaster County, Pennsylvania seeking damages from various contractors working at the construction site (¶ 15 of Hartford's Amended Declaratory Judgment Complaint).[1] A copy of the Mr. and Mrs. Zern's Amended Complaint in the Court of Common Pleas of Lancaster County (Civil Action No.: 10-15805) is attached as Attachment "A."

III. *STATEMENT OF QUESTIONS INVOLVED*

WHETHER BRIAN D. ZERN AND LYNETTE L. ZERN, PLAINTIFFS IN A PENDING STATE COURT PERSONAL INJURY ACTION AGAINST DEFENDANT, HAVE AN INTEREST IN THE WITHIN DECLARATORY JUDGMENT ACTION THAT REQUIRES THAT THEY BE JOINED AS INDISPENSABLE PARTIES PURSUANT TO Fed.R.Civ.P. 19 TO PROTECT THAT INTEREST?

Suggested Answer:     Yes.

WHETHER BRIAN D. ZERN AND LYNETTE L. ZERN, PLAINTIFFS IN A PENDING STATE COURT PERSONAL INJURY ACTION AGAINST DEFENDANT, HAVE AN INTEREST IN THE WITHIN DECLARATORY JUDGMENT ACTION SUCH THAT THEY SHOULD BE GRANTED PERMISSION TO INTERVENE AS PARTY DEFENDANTS PURSUANT TO Fed.R.Civ.P. 24 TO PROTECT THAT INTEREST?

Suggested Answer:     Yes.

IV.     *ARGUMENT*

**JOINDER AS INDISPENSABLE PARTIES**

The resolution of the issue raised in Mr. and Mrs. Zern's Motion for Joinder as Indispensable Parties Pursuant to Fed.R.Civ.P. 19 is controlled by the *Federal Kemper Insurance Company*, 807 F.2d 345 (3d Cir. 1986), *American Automobile Insurance Company v. Murray*, 658 F.3d 311 (3d Cir. 2011) and *Brotherhood Mutual Insurance Company v. Salem Baptist Church of Jenkintown*, 2012 U.S. Dist. LEXIS 59981 (E.D. Pa. April 30, 2012) decisions. [2]

---

[1] Mr. Cardenas was not named as a defendant in the Complaint filed by Mr. and Mrs. Zern. However, an original defendant joined Mr. Cardenas as an additional defendant. The Joinder Complaint was filed on or about February 22, 2011 – within the 2 year statute of limitations period. Thus, Mr. and Mrs. Zern have a direct claim against Mr. Cardenas in the Underlying Action pursuant to Pa.R.Civ.P. 2255(d).

[2] The *Liberty Mutual Insurance Company v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005) decision is inapplicable to the resolution of the present issue because "it dealt solely with the standard for intervention under Fed.R.Civ.P. 24, and altogether failed to address the principle of standing". *Murray*, 658 F.3d at 318 n.4.

In *Rauscher*, Federal Kemper (the insurer) sued Rauscher (its insured) as well as the parties injured in an automobile accident allegedly caused by Rauscher.[3] The suit was a declaratory judgment action to determine whether or not the insurer was obligated to defend and indemnify Rauscher in a personal injury suit filed by the injured parties against Rauscher. Rauscher did not answer the Complaint in the declaratory judgment action and a default judgment was entered against him. *Rauscher*, 807 F.2d at 348. This Court simultaneously entered a judgment against the injured parties, finding their rights were "purely derivative" of Rauscher's rights as a policyholder. *Id.* at 348-49.

The Third Circuit Court of Appeals reversed holding that an injured party has standing to defend a declaratory judgment action brought by an insurer. *Id.* at 352-53. The Third Circuit Court of Appeals concluded that a case or controversy existed between the injured parties and the insurer, even in the insured's absence. *Id.* at 353. **In dicta, the Court noted that the injured parties were indispensable parties for purposes of Fed.R.Civ.P. 19**. *Id.* at 354 n.5. (emphasis added).

Like *Rauscher*, *Murray* was a declaratory judgment action regarding the coverage of an insurance policy. American Automobile Insurance Company ("American") (the insurer) sued Murray (its insured) as well as the injured parties who filed various personal injury lawsuits. This Court entered summary judgment in favor of American. *Murray*, 658 F.3d at 317. The Third Circuit Court of Appeals concluded that the injured parties had standing to appeal the district court judgment "as a directly injured party of the insured." *Id.* at 314.

The Third Circuit Court of Appeals briefly considered both *Rauscher* and *Treesdale* and concluded that *Rauscher* applied to the facts before it. *Id.* at 318 n.4. While *Murray* affirmed *Treesdale* as it applies to Fed.R.Civ. P. 24 motions for intervention, it made it clear that *Rauscher* has not been overruled and remains good law.

In *Salem Baptist Church*, Chief Judge Joyner reviewed and applied *Rauscher* and *Murray* to facts similar to the present case. In *Salem Baptist Church*, Brotherhood Mutual Insurance Company ("Brotherhood Mutual") (the insurer) sued Salem Baptist Church of Jenkintown, Pennsylvania ("Salem Baptist Church") (its insured) seeking a declaration from the district court that it had no duty to defend or indemnify Salem Baptist Church in a pending lawsuit brought in federal court by Walter Logan ("Mr. Logan") and The Delta Alliance, LLC ("Delta"). Mr. Logan and Delta then filed a Motion to Intervene in the declaratory judgment action brought by Brotherhood Mutual. The Estate of Lester Mack ("Mack Estate"), the plaintiff in another federal court lawsuit filed against Salem Baptist Church, filed a Petition to Intervene in the declaratory judgment action as well. *Salem Baptist Church*, 2012 U.S. Dist. LEXIS 59981 at *1-3.

---

[3] Presumably, Hartford did not name Mr. and Mrs. Zern, or any other party in the pending state court personal injury action as defendants in this matter, as it believed it would have a clearer path to a declaration that it had no obligation to defend or indemnify its insured, Mr. Cardenas, if no one appeared in this action to challenge its request. Had Hartford brought this declaratory judgment action in state court, Mr. and Mrs. Zern, and the other defendants in the state court action, would have had to been joined as defendants. See 42 P.C.S.A. § 7540.

After reviewing *Rauscher* and *Murray*, Chief Judge Joyner concluded that he was bound by the precedent set in *Treesdale* to deny intervention pursuant to Fed.R.Civ.P. 24 to Mr. Logan, Delta and the Mack Estate. However, he found that each were indispensable parties pursuant to Fed. R.Civ.P. 19 and joined them as parties in the declaratory judgment action filed by Brotherhood Mutual.

In determining that Mr. Logan, Delta and the Mack Estate had an interest in the declaratory judgment action filed by Brotherhood Mutual, and that their ability to protect their interest would be impaired if they were not joined as parties to the action, Chief Judge Joyner noted that "in many of the liability insurance cases, the most real dispute is between the injured third party and the insurance company, not between the injured and oftentimes impecunious insured". *Salem Baptist Church* 2012 U.S. Dist. LEXIS 59981 at *11-12 (*quoting Rauscher*, 807 F.2d at 354). Chief Judge Joyner further stated that an injured third party in an insurance coverage dispute suffers "a concrete and particularized invasion of a legally protected interest that is actual or imminent, not conjectural or hypothetical." *Id.*, 2012 U.S. Dist. LEXIS 59981 at *12 (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed 2d 351 (1992)).

Mr. and Mrs. Zern's interest in the present litigation is identical to Ennie, Inc.'s interest in the *Murray* declaratory judgment action and Mr. Logan, Delta and the Mack Estate's interest in the *Salem Baptist Church* declaratory judgment action. In each case, the injured parties were seeking monetary relief from an insurer, contingent on future success in a tort action. In that situation, the injured parties have "a particularized interest in the lawsuit because a determination of [Defendant's] coverage would dictate [their] ability to receive the full benefit" of their respective tort suits". *Id.*, 2012 U.S. Dist. LEXIS 59981 at *14 (*quoting Murray*, 658 F.3d at 319).

The instant matter is procedurally identical to *Salem Baptist Church* in that Mr. and Mrs. Zern were not named as defendants by Hartford in its Declaratory Judgment Complaint and Amended Declaratory Judgment Complaint. Both the instant case and the *Salem Baptist Church* case are procedurally different than the *Rauscher* and *Murray* cases in that the injured parties were named as defendants in the declaratory judgments actions filed by the insurers in those cases. In addressing this issue in *Salem Baptist Church*, Chief Judge Joyner indicated that this difference did not change the fact that Mr. Logan, Delta and the Mack Estate had a justiciable case or controversy – nor does it change the fact that Mr. and Mrs. Zern have a justiciable case or controversy. *Id.*, 2012 U.S. Dist. LEXIS 59981 at *14.

In reaching this conclusion, Chief Judge Joyner noted in a footnote that he was not persuaded that an injured third party's interest in an insurance coverage action hinges on an insurer-plaintiff's choice to either include or exclude the injured party's name on the complaint. *Id.* Chief Judge Joyner indicated that to find otherwise would invite collusion between the insurer and its insured, particularly in cases where the insured is judgment proof. *Id.*, 2012 U.S. Dist. LEXIS 59981 at *14-15, n.7.

Finally, Chief Judge Joyner concluded that by failing to join Mr. Logan, Delta and the Mack Estate in the declaratory judgment action filed by Brotherhood Mutual, collateral estoppel, issue preclusion, and/or inconsistent verdicts could negatively

affect the Movants. *Id.,* 2012 U.S. Dist. LEXIS 59981 at *16-18. He indicated, "Barring Movants' joinder would impair their ability to protect their interest in the Policy." *Id.,* 2012 U.S. Dist. LEXIS 59981 at *15.

It appears that Hartford strategy in this declaratory judgment action was to have Mr. and Mrs. Zern's interest in its insurance policy extinguished without them learning of it until after the fact. Mr. and Mrs. Zern have a substantial interest in the determination of whether Hartford has an obligation to defend and/or indemnify Mr. Cardenas. Their interest cannot be protected if they are not parties to the within action - especially when Mr. Cardenas has not appeared in the action.

Finally, as Mr. and Mrs. Zern are citizens of Pennsylvania, their joinder as defendants in this action will not deprive this Court of subject matter jurisdiction or venue.

**PERMISSIVE INTERVENTION**

In support of their motion in the alternative to be granted permission to intervene in the referenced declaratory judgment action, Movants Brian and Lynette Zern rely on and incorporate by reference both the motion and brief in support thereof filed by Smucker Company and Paramount Contracting, Inc. to be joined as indispensable parties or in the alternative for permission to intervene in the instant declaratory judgment action.

V.     CONCLUSION

Mr. and Mrs. Zern have a real and substantial interest in the declaratory judgment action filed by Hartford. Their interest cannot be protected by any person who is presently a defendant in this action. As such, it is requested that this Court join them as defendants in this action pursuant to Fed.R.Civ.P. 19(a)(2) or in the alternative that this Court grant permission for them to intervene pursuant to Fed.R.Civ.P. 24(b)(1)(B).

MIKUS LAW ASSOCIATES, P.C.

Date: 9·28·12

By: _____
Kent D. Mikus, Esquire
Attorney I.D. No. 23587
1623 Lampeter Road
Lancaster, PA 17602
(717) 464-7480
Attorney for Brian D. Zern and
Lynette L. Zern

## CERTIFICATE OF SERVICE

I hereby certify that on this day I sent a true and correct copy of the foregoing document, Brian D. Zern and Lynette L. Zern's Brief In Support of Motion for Joinder as Indispensable Parties Pursuant to Fed.R.Civ.P. 19, upon the following persons as indicated below.

The foregoing document was sent by first class mail to:

David E. Edwards, Esquire
White and Williams, LLP
1650 Market Street
One Liberty Place
Suite 1800
Philadelphia, PA 19103-7395

We are attempting hand delivery to:

Roldolfo Cardenas d/b/a RC Drywall
1138 Pine Street
Easton, PA 18042

MIKUS LAW ASSOCIATES, P.C.

Date: _9.28.12_

By: _____
Kent D. Mikus, Esquire
Attorney I.D. No. 23587
1623 Lampeter Road
Lancaster, PA 17602
(717) 464-7480
Attorney for Brian D. Zern and
Lynette L. Zern

**ATTACHMENT A**

BRIAN D. ZERN and LYNETTE
L. ZERN,

      Plaintiffs
      vs.

SMUCKER COMPANY, PARAMOUNT
CONTRACTING, INC., JESSUP DRYWALL
SERVICES, LLC,

      Defendants
      vs.

RODOLFO CARDENAS d/b/a
RC DRYWALL,

      Additional Defendant

No.: 10-15805

JURY TRIAL DEMANDED

## AMENDED COMPLAINT

### Parties

1.    Plaintiffs, Brian D. Zern and Lynette L. Zern (hereinafter "Mr. and Mrs. Zern") are adult individuals who reside at 480 Bentzel Road, Shermans Dale, Pennsylvania 17090.

2.    Defendant, Smucker Company (hereinafter "Smucker Company") is a Pennsylvania limited liability corporation with a principal place of business located at 2445 Old Philadelphia Pike, Smoketown, Pennsylvania 17576.

3.    Defendant, Paramount Contracting, Inc. (hereinafter "Paramount") is a Pennsylvania corporation with a principal place of business located at 219 Witmer Road, Lancaster, Pennsylvania 17602.

1

4.     Defendant, Jessup Drywall Services, LLC (hereinafter "Jessup Drywall") is a Pennsylvania limited liability corporation with a principal place of business located at 18 Amoroso Lane, Pottstown, Pennsylvania 19464.

5.     Additional Defendant, Rodolfo Cardenas, is an adult individual doing business as RC Drywall (hereinafter "Cardenas") with a principle place of business located at 1138 Pine Street, Easton PA 18042.

## Operative Facts

6.     On March 4, 2010, R.S. Mowery & Sons, Inc. (hereinafter "R.S. Mowery") was the general contractor for the construction of a church known as The Worship Center (hereinafter "The Project") located at 2384 New Holland Pike, Lancaster, Pennsylvania 17601.

7.     On March 4, 2010, Mr. Zern was employed by R.S. Mowery.

8.     Prior to March 4, 2010, R.S. Mowery subcontracted drywall work on The Project to Smucker Company.

9.     Prior to March 4, 2010, Smucker Company sub-subcontracted portions of its drywall work on The Project to Paramount.

10.     Prior to March 4, 2010, Smucker Company sub-subcontracted portions of its drywall work on The Project to Jessup Drywall.

11.     In the alternative to paragraph 10, above, prior to March 4, 2010, Paramount sub-subcontracted portions of its drywall work on The Project to Jessup Drywall.

2

12.    Lupe Carbajal (hereinafter "Mr. Carbajal") is an adult individual whose present address is unknown to Mr. and Mrs. Zern.

13.    Leonardo Garcia (hereinafter "Mr. Garcia") is an adult individual whose present address is unknown to Mr. and Mrs. Zern.

14.    On March 4, 2010, Mr. Carbajal was employed by Jessup Drywall to work on The Project and was acting within the course and scope of his employment for, and was furthering the business interest of, Jessup Drywall while performing work on The Project.

15.    In the alternative to paragraph 14, on March 4, 2010, Mr. Carbajal was employed by Cardenas to work on The Project and was acting within the course and scope of his employment for, and was furthering the business interest of Cardenas while performing work on The Project.

16.    On March 4, 2010, Mr. Garcia was employed by Jessup Drywall to work on the Project and was acting within the course and scope of his employment for, and was furthering the business interest of, Jessup Drywall while performing work on The Project.

17.    In the alternative to paragraph 16, on March 4, 2010, Mr. Garcia was employed by Cardenas to work on The Project and was acting within the course and scope of his employment for, and was furthering the business interest of Cardenas while performing work on The Project.

18. At approximately 2:30 p.m. on March 4, 2010, Mr. Carbajal and Mr. Garcia were installing drywall approximately twenty-eight (28) feet above an archway in the stage area of the church.

19. As Mr. Carbajal and Mr. Garcia were installing the drywall, they dropped a four (4) feet by six (6) feet sheet of drywall weighing approximately fifty (50) pounds.

20. The four (4) feet by six (6) feet sheet of drywall fell approximately twenty-eight (28) feet and struck Mr. Zern on the left shoulder.

21. As a result of being struck by the four (4) feet by six (6) feet sheet of drywall, Mr. Zern sustained serious and permanent injuries as hereinafter described.

**COUNT I**
**BRIAN D. ZERN v. SMUCKER COMPANY**
**NEGLIGENCE**

22. Plaintiffs incorporate herein by reference paragraphs 1-21 of their Complaint as if set forth in full.

23. While performing its work on The Project, Smucker Company acted by and through its employees, agents and/or representatives who acted within the scope of their employment for Smucker Company and/or their express and/or apparent authority as employees, agents and/or representatives of Smucker Company.

24. Smucker Company owed a duty of care to Mr. Zern to enact and enforce safety rules and regulations on The Project and to ensure that all sub-

subcontractors hired by it on The Project performed their work in a manner that did not cause harm to other workers on The Project, including Mr. Zern.

25.    Smucker Company, in its individual capacity, and through the actions and inactions of its employees, agents and/or representatives, breached its duty of care to Mr. Zern and its breach of duty to Mr. Zern was a factual cause of the aforementioned accident.

26.    The negligence and carelessness of Smucker Company, in its individual capacity, and through the actions and inactions of its employees, agents and/or representatives, consisted of the following acts, and failures to act:

    a.    Failing to determine if the drywall sub-subcontractors who worked on The Project were competent and that they would comply with accepted safety practices, including those safety practices related to protection of persons from falling objects;

    b.    Failing to adopt, enforce and monitor a safety program that required the drywall sub-subcontractors to comply with applicable OSHA regulations, including 29 CFR § 1926.501(c); and,

    c.    Failing to adopt a safety program for drywall installers at The Project to protect others from falling objects.

27.    Smucker Company's negligent and careless conduct was a factual cause of Mr. Zern suffering serious and permanent personal injury including, without limitation, the following injuries:

    a.    Severe left brachial plexus injury with avulsion of the C7, C8 and T1 nerve roots;

    b.      Significant pseudosubluxation of left glenohumeral joint;

    c.      Left clavicle fracture;

    d.      Left 1st, 2nd, and 3rd rib fractures;

    e.      Left scapular fracture extending across the base of the left acromion;

    f.      Left distal humerus fracture;

    g.      Left radius fracture;

    h.      Left lung contusion;

    i.      Left apical pneumothorax with a pleural hematoma;

    j.      Cardiac contusion;

    k.      Left kidney contusion;

    l.      Partial left-sided Horner's syndrome;

    m.      Abrasions and contusions to the soft tissue and muscles of the left shoulder and upper torso;

    n.      Injuries to the nerves of the neck, upper back, left shoulder and left arm and hand; and

    o.      Any additional injuries identified in the medical records or to be determined.

28.    Smucker Company is liable to Mr. Zern for the following damages and losses, which are hereby claimed in this action:

    a.      The injuries and damages as set forth in the preceding paragraph;

    b.      Past and future medical expenses;

    c.      Past loss of earnings and future loss of earning capacity;

    d.      All other past and future economic damages recoverable by

law;

e. Past and future pain and suffering, embarrassment and humiliation, loss of the ability to enjoy the pleasures of life and disfigurement; and

f. All other past and future non-economic damages recoverable by law.

WHEREFORE, Plaintiff, Brian D. Zern hereby demands judgment against Defendant, Smucker Company, jointly and severally with Paramount Contracting, Inc., Jessup Drywall Services, LLC, and Rodolfo Cardenas d/b/a RC Drywall in an amount in excess of $50,000.00 together with interest, costs and delay damages as authorized by law.

## COUNT II
### BRIAN D. ZERN v. PARAMOUNT CONTRACTING, INC.
### NEGLIGENCE

29. Plaintiffs incorporate herein by reference paragraphs 1- 28 of their Complaint as if set forth in full.

30. While performing its work on The Project, Paramount acted by and through its employees, agents and/or representatives who acted within the scope of their employment for Paramount and/or their express and/or apparent authority as employees, agents and/or representatives of Paramount.

31. Paramount was contractually obligated to provide supervision:

a. For the drywall hanging performed at the Project by employees of Cardenas including Mr. Carbajal and Mr. Garcia; and

b. For the workers needed to complete the drywall hanging that was performed under the Subcontract that it entered into with

7

Smucker Company on December 17, 2009, a copy of which is attached hereto, incorporated herein and marked Exhibit "A".

32.     With regard to work they performed at the Project, Mr. Carbajal and Mr. Garcia were subject to the control of Paramount.

33.     Paramount is vicariously liable for the negligence of Mr. Carbajal and Mr. Garcia.

34.     The negligence and carelessness of Mr. Carbajal and Mr. Garcia consisted of the following acts, and failures to act:

      a.     Negligent handling of the drywall panel that fell twenty-eight (28) feet and struck Mr. Zern;

      b.     Dropping the drywall panel that fell twenty-eight (28) feet and struck Mr. Zern;

      c.     Failure to comply with accepted safety practices including those safety practices related to protection of persons from falling objects; and,

      d.     Failure to comply with applicable OSHA regulations, including 29 CFR §1926.501(c).

35.     Paramount owed a duty of care to Mr. Zern to enact and enforce safety rules and regulations on The Project and to ensure that all sub-subcontractors hired and/or supervised by it on The Project performed their work in a manner that did not cause harm to other workers on The Project, including Mr. Zern.

36.     While performing its work on The Project, Paramount acted by and through its employees, agents and/or representatives who acted within the scope of their employment for Paramount and/or their express and/or apparent authority as employees, agents and/or representatives of Paramount.

37.     Paramount, in its individual capacity, and through the actions and inactions of its employees, agents and/or representatives, breached its duty of care to Mr. Zern and its breach of duty to Mr. Zern was a factual cause of the aforementioned accident.

38.     The negligence and carelessness of Paramount, in its individual capacity, and through the actions and inactions of its employees, agents and/or representatives, consisted of the following acts, and failures to act:

a.     Failing to determine if the drywall sub-subcontractors who worked on The Project were competent and understood and would comply with accepted safety practices, including those safety practices related to protection of persons from falling objects;

b.     Failing to adopt, enforce and monitor a safety program that required the drywall sub-subcontractors to comply with applicable OSHA regulations, including 29 CFR §1926.501(c);

c.     Failing to adopt a safety program for drywall installers at The Project to protect others from falling objects; and,

d.     Failing to provide adequate supervision of and control over the work performed at the Project by Mr. Carbajal and Mr. Garcia.

39.    Paramount's negligent and careless conduct was a factual cause of Mr. Zern suffering serious and permanent personal injury including, without limitation, the following injuries:

a.    Severe left brachial plexus injury with avulsion of the C7, C8 and T1 nerve roots;

b.    Significant pseudosubluxation of left glenohumeral joint;

c.    Left clavicle fracture;

d.    Left 1st, 2nd, and 3rd rib fractures;

e.    Left scapular fracture extending across the base of the left acromion;

f.    Left distal humerus fracture;

g.    Left radius fracture;

h.    Left lung contusion;

i.    Left apical pneumothorax with a pleural hematoma;

j.    Cardiac contusion;

k.    Left kidney contusion;

l.    Partial left-sided Horner's syndrome;

m.    Abrasions and contusions to the soft tissue and muscles of the left shoulder and upper torso;

n.    Injuries to the nerves of the neck, upper back, left shoulder and left arm and hand; and

o.    Any additional injuries identified in the medical records or to be determined.

40. Paramount is liable to Mr. Zern for the following damages and losses, which are hereby claimed in this action:

    a. The injuries and damages as set forth in the preceding paragraph;

    b. Past and future medical expenses;

    c. Past loss of earnings and future loss of earning capacity;

    d. All other past and future economic damages recoverable by law;

    e. Past and future pain and suffering, embarrassment and humiliation, loss of the ability to enjoy the pleasures of life and disfigurement; and

    f. All other past and future non-economic damages recoverable by law.

WHEREFORE, Plaintiff, Brian D. Zern hereby demands judgment against Defendant, Paramount Contracting, Inc., jointly and severally with Smucker Company, Jessup Drywall Services, LLC, and Rodolfo Cardenas d/b/a RC Drywall in an amount in excess of $50,000.00 together with interest, costs and delay damages as authorized by law.

## COUNT III
## BRIAN D. ZERN v. JESSUP DRYWALL SERVICES, LLC
## NEGLIGENCE

41. Plaintiffs incorporate herein by reference paragraphs 1- 40 of their Complaint as if set forth in full.

42. While performing its work on The Project, Jessup Drywall acted by and through its employees, agents and/or representatives who acted within the scope of their employment for Jessup Drywall and/or their express and/or

11

apparent authority as employees, agents and/or representatives of Jessup Drywall.

43.    Jessup Drywall owed a duty of care to Mr. Zern to ensure that it performed its work on The Project in a manner that did not cause harm to Mr. Zern.

44.    Jessup Drywall owed a duty of care to Mr. Zern to enact and enforce safety rules and regulations on The Project and to ensure that all sub-subcontractors hired and/or supervised by it on The Project performed their work in a manner that did not cause harm to other workers on The Project, including Mr. Zern.

45.    Jessup Drywall, in its individual capacity, and through the actions and inactions of its employees, agents and/or representatives, breached its duty of care to Mr. Zern and its breach of duty to Mr. Zern was a factual cause of the accident as aforementioned.

46.    The negligence and carelessness of Jessup Drywall, in its individual capacity, and through the actions and inactions of its employees, agents and/or representatives, consisted of the following acts, and failures to act:

  a.    Failing to determine that the drywall installers that it sent to work on The Project were competent and that they understood and would comply with accepted safety practices especially as those safety practices related to protection of persons from falling objects;

  b.    Failing to supply drywall installers who were competent and who understood and who would comply with accepted safety practices including those safety practices related to protection of persons from falling objects;

c.    Failing to adopt, enforce and monitor a safety program that required the drywall installers that it sent to work on The Project to comply with applicable OSHA regulations, including 29 CFR §1926.501(c);

d.    Failing to adopt a safety program for drywall installers at The Project to protect persons from falling objects; and,

e.    Failing to provide adequate supervision of and control over the work performed at the Project by Mr. Carbajal and Mr. Garcia.

47.    Jessup Drywall is vicariously liable for the negligence of Mr. Carbajal and Mr. Garcia.

48.    The negligence and carelessness of Mr. Carbajal and Mr. Garcia consisted of the following acts, and failures to act:

a.    Negligent handling of the drywall panel that fell twenty-eight (28) feet and struck Mr. Zern;

b.    Dropping the drywall panel that fell twenty-eight (28) feet and struck Mr. Zern;

c.    Failure to comply with accepted safety practices including those safety practices related to protection of persons from falling objects; and,

d.    Failure to comply with applicable OSHA regulations, including 29 CFR §1926.501(c).

49.    Jessup Drywall's negligent and careless conduct and the negligent and careless conduct of its employees were factual causes of Mr. Zern suffering serious, and permanent, personal injury including, without limitation, the following injuries:

a.    Severe left brachial plexus injury with avulsion of the C7, C8 and T1 nerve roots;

13

b.      Significant pseudosubluxation of left glenohumeral joint;

c.      Left clavicle fracture;

d.      Left 1st, 2nd, and 3rd rib fractures;

e.      Left scapular fracture extending across the base of the left acromion;

f.      Left distal humerus fracture;

g.      Left radius fracture;

h.      Left lung contusion;

i.      Left apical pneumothorax with a pleural hematoma;

j.      Cardiac contusion;

k.      Left kidney contusion;

l.      Partial left-sided Horner's syndrome;

m.      Abrasions and contusions to the soft tissue and muscles of the left shoulder and upper torso;

n.      Injuries to the nerves of the neck, upper back, left shoulder and left arm and hand; and

o.      Any additional injuries identified in the medical records or to be determined.

50.      Jessup Drywall is liable to Mr. Zern for the following damages and losses, which are hereby claimed in this action:

a.      The injuries and damages as set forth in the preceding paragraph;

b.      Past and future medical expenses;

c.      Past loss of earnings and future loss of earning capacity;

d. All other past and future economic damages recoverable by law;

e. Past and future pain and suffering, embarrassment and humiliation, loss of the ability to enjoy the pleasures of life and disfigurement; and

f. All other past and future non-economic damages recoverable by law.

WHEREFORE, Plaintiff, Brian D. Zern hereby demands judgment against Defendant, Jessup Drywall Services, LLC, jointly and severally with Smucker Company, Paramount Contracting, Inc., and Rodolfo Cardenas d/b/a RC Drywall in an amount in excess of $50,000.00 together with interest, costs and delay damages as authorized by law.

## COUNT IV
## BRIAN D. ZERN v. RODOLFO CARDENAS d/b/a RC DRYWALL
## NEGLIGENCE

51. Plaintiffs incorporate herein by reference paragraphs 1- 50 of their Complaint as if set forth in full.

52. While performing its work on The Project, Cardenas acted by and through his employees, agents and/or representatives who acted within the scope of their employment for Cardenas and/or their express and/or apparent authority as employees, agents and/or representatives of Cardenas.

53. Cardenas owed a duty of care to Mr. Zern to enact and enforce safety rules and regulations on The Project and to ensure that all of his employees performed their work at the Project in a manner that did not cause harm to other workers on The Project, including Mr. Zern.

15

54.     Cardenas, in his individual capacity, and through the actions and inactions of his employees, agents and/or representatives, breached his duty of care to Mr. Zern and its breach of duty to Mr. Zern was a factual cause of the accident as aforementioned.

55.     The negligence and carelessness of Cardenas, in his individual capacity, and through the actions and inactions of his employees, agents and/or representatives, consisted of the following acts, and failures to act:

    a.    Failing to determine that the Mr. Carbajal and Mr. Garcia were competent and that they understood and would comply with accepted safety practices especially as those safety practices related to protection of persons from falling objects;

    b.    Failing to supply drywall installers who were competent and who understood and who would comply with accepted safety practices including those safety practices related to protection of persons from falling objects;

    c.    Failing to adopt, enforce and monitor a safety program that required the drywall installers that it sent to work on The Project to comply with applicable OSHA regulations, including 29 CFR §1926.501(c);

    d.    Failing to adopt a safety program for drywall installers at The Project to protect persons from falling objects; and,

    e.    Failing to provide adequate supervision of and control over the work performed at the Project by Mr. Carbajal and Mr. Garcia.

56.     Cardenas is vicariously liable for the negligence of Mr. Carbajal and Mr. Garcia.

57.     The negligence and carelessness of Mr. Carbajal and Mr. Garcia consisted of the following acts, and failures to act:

    a.    Negligent handling of the drywall panel that fell twenty-eight (28) feet and struck Mr. Zern;

    b.    Dropping the drywall panel that fell twenty-eight (28) feet and struck Mr. Zern;

    c.    Failure to comply with accepted safety practices including those safety practices related to protection of persons from falling objects; and,

    d.    Failure to comply with applicable OSHA regulations, including 29 CFR § 1926.501(c).

58.     Cardenas' negligent and careless conduct and the negligent and careless conduct of his employees were factual causes of Mr. Zern suffering serious, and permanent, personal injury including, without limitation, the following injuries:

    a.    Severe left brachial plexus injury with avulsion of the C7, C8 and T1 nerve roots;

    b.    Significant pseudosubluxation of left glenohumeral joint;

    c.    Left clavicle fracture;

    d.    Left 1st, 2nd, and 3rd rib fractures;

    e.    Left scapular fracture extending across the base of the left acromion;

    f.    Left distal humerus fracture;

    g.    Left radius fracture;

    h.    Left lung contusion;

    i.    Left apical pneumothorax with a pleural hematoma;

17

j.     Cardiac contusion;

k.     Left kidney contusion;

l.     Partial left-sided Horner's syndrome;

m.    Abrasions and contusions to the soft tissue and muscles of the left shoulder and upper torso;

n.     Injuries to the nerves of the neck, upper back, left shoulder and left arm and hand; and

o.     Any additional injuries identified in the medical records or to be determined.

59.    Cardenas is liable to Mr. Zern for the following damages and losses, which are hereby claimed in this action:

a.     The injuries and damages as set forth in the preceding paragraph;

b.     Past and future medical expenses;

c.     Past loss of earnings and future loss of earning capacity;

d.     All other past and future economic damages recoverable by law;

e.     Past and future pain and suffering, embarrassment and humiliation, loss of the ability to enjoy the pleasures of life and disfigurement; and

f.     All other past and future non-economic damages recoverable by law.

WHEREFORE, Plaintiff, Brian D. Zern hereby demands judgment against Defendant, Rodolfo Cardenas d/b/a RC Drywall and severally with Smucker Company, Paramount Contracting, Inc., and Jessup Drywall Services, LLC in an

amount in excess of $50,000.00 together with interest, costs and delay damages as authorized by law.

COUNT V

LYNETTE L. ZERN v. SMUCKER COMPANY, JESSUP DRYWALL SERVICES, LLC,
PARAMOUNT CONTRACTING, INC., and ROLDOLFO CARDENAS
d/b/a RC DRYWALL -- LOSS OF CONSORTIUM

60.     Plaintiffs incorporate herein by reference paragraphs 1-59 of their Complaint as if set forth in full.

61.     At all times relevant hereto, Mrs. Zern was, and is, the wife of Mr. Zern.

62.     The negligence of Smucker Company, Paramount, Jessup Drywall and Cardenas was a factual cause in Mrs. Zern being deprived of the care, companionship, assistance, and consortium of her husband for which damages are claimed.

WHEREFORE, Plaintiff, Lynette L. Zern hereby demands judgment against Defendants, Smucker Company, Paramount Contracting, Inc., Jessup Drywall Services LLC, and Rodolfo Cardenas d/b/a RC Drywall jointly and severally, in an amount in excess of $50,000.00 together with interest, costs and delay damages as authorized by law.

MIKUS LAW ASSOCIATES, P.C.

Date: _4-18-12_                    By: _____

Kent D. Mikus, Esquire
Attorney I.D. No. 23587
1623 Lampeter Road
Lancaster, PA 17602
(717) 464-7480
Attorneys for Plaintiffs

EXHIBIT A

# SUBCONTRACT

# This Agreement, Made this 17th day of December, 2009,

Between the Subcontractor:    Paramount Contracting, Inc.
219 Witmer Road
Lancaster, PA 17602

And the Contractor:    Smucker Company
2445 Old Philadelphia Pike
Smoketown, PA 17576

The Project:    The Worship Center
The Owner:    The Worship Center, Inc.
The General Contractor:    R. S. Mowery & Sons, Inc.
The Architect:    BGW

The Contractor and Subcontractor agree as set forth below.

**1. CONTRACT DOCUMENTS:** The Contract Documents for this Subcontract consist of the Agreement and any Exhibits attached hereto, the Agreement between the General Contractor and the Contractor, the Conditions of the Contract between the General Contractor and the Contractor, Architectural Drawings dated 8/07/09 and 9/29/09 and Specifications dated 9/21/09.

**2. WORK TO BE PERFORMED:** The Subcontractor and the Contractor agree on the following scope of work:
Provide labor, tools, equipment and scaffold to hang and finish the drywall and beads for walls, ceilings, soffits and window returns as shown on the Contract Documents for the entire building (except for the portion of Faith Factory designated as Section #3).
Scope does not include fire safing or firespray.
Provide a "lead man" for communication with Contractor's Foreman regarding scope, quality, schedule, questions for the General Contractor, etc.
All communication with General Contractor shall be processed through the Contractor's Foreman.
Clean up of work areas with scrap in piles centered in each room; Agri-Marketing will then remove the scrap from the building.
Contractor will provide:
-power lifts (if needed to efficiently install the Work)
-material (including accessory material)
-Foreman to provide overall supervision of Contractor's project scope of metal studs, drywall, insulation and acoustical. (Contractor's Foreman will not provide specific supervision for Subcontractor's Work and/or crews.)

**3. SCHEDULE OF WORK:** Time is of the essence for the Subcontractor and the Contractor. Subcontractor will perform his work with a sufficient amount of labor and material so the work can be completed as rapidly as possible and not delay or interfere with the progress of the project. For failure to commence and complete his work on time, the Subcontractor shall be subject to damages and remedies by the Contractor as set forth in other portions of this Agreement.

**4. CONSIDERATION:** The Contractor agrees to pay the Subcontractor for the performance of his work: the sum of ----- ONE HUNDRED SIXTY-NINE THOUSAND TWO HUNDRED ----- 00/100 ($169,200.00) in current funds, subject to additions and deductions for each changes as may be agreed upon in writing and approved by the Contractor, said sum to be paid as follows:
(a) PROGRESS PAYMENTS: (1) The Contractor shall pay the Subcontractor monthly progress payments in the amount of 90% of the Application submitted. Applications shall be in writing and shall be submitted to the Contractor on or before the 20th day of each month for work performed through the end of the month. The 10% balance shall be held as retainage and will be paid when retainage is paid to the Contractor by the General Contractor.
(2) Unless otherwise provided in the Contract Documents, the Contractor shall pay the Subcontractor each progress payment within Seven working days after the Contractor has received payment from the General Contractor for labor and material covered in the Application submitted by the Subcontractor.
(b) FINAL PAYMENT: (1) The final payment shall be paid by the Contractor to the Subcontractor within Seven days after the Contractor shall have received the final payment from the General Contractor.
(2) As a further condition of progress payments and final payment, the Contractor may require the Subcontractor to furnish receipted invoices for all materials incorporated into the work or placed on the job site, supported by the affidavit of the Subcontractor setting forth that all claims for labor and material have been paid, with names and addresses of all laborers and materialmen listed.
(3) No certificate given or payment made under this contract, except the final certificate or final payment shall be conclusive evidence of the performance of this contract, either wholly or in part, and no payment shall be construed to be an acceptance of defective work or improper materials.

**5. SUBCONTRACTOR'S RESPONSIBILITIES:** The subcontractor agrees:

1



SMUC9001

(a) To be bound to the Contractor by the terms of this Agreement and of the Contract Documents between the General Contractor and Contractor, and shall assume toward the Contractor all the obligations and responsibilities which the Contractor, by those Documents, assumes toward the General Contractor, and shall have the benefit of all rights, remedies and redress against the General Contractor which the Contractor, by those Documents, has against the General Contractor, insofar as applicable to this Subcontract, provided that where any provisions of the Contract Documents between the General Contractor and Contractor is inconsistent with any provisions of this Agreement, this Agreement shall govern.

(b) To submit to the Contractor applications for payment in such reasonable time as to enable the Contractor to apply to the General Contractor for payment.

(c) To make all claims for extras, for extensions of time and for damages for delays or otherwise, to the Contractor in writing before proceeding to execute such work.

(d) That this Subcontract shall not be assigned unless the Contractor shall first consent thereto in writing.

(e) To carry coverage and pay for the premiums for the following insurance: Worker's Compensation, Comprehensive General Liability, Automobile Liability and Excess Liability Umbrella. Subcontractor shall provide to the Contractor a certificate of insurance that names the Contractor as an ADDITIONAL INSURED. Additional insured for the Commercial General Liability shall include on-going and completed operations on a primary basis. The certificate of insurance shall be provided prior to Subcontractor commencing any work or services. Additionally the Subcontractor shall supply Contractor with a new and updated certificate of insurance on an annual basis. The minimum limits of insurance are as follows:

1. General Liability: $1,000,000 per occurrence and $3,000,000 General Aggregate
2. Auto Liability: $1,000,000 Combined Single Limit
3. WC & Employers Liability: $100,000 per/Accident $100,000 Each Employee (Disease) and $500,000 Total Policy (Disease)
4. Umbrella Liability: $3,000,000

NOTE: GENERAL LIABILITY AGGREGATE MUST BE ON A "PER PROJECT" BASIS

(f) To pay all social security, unemployment compensation, sales or other taxes or charges assessed against the wages or salary of the Subcontractor's employees or officers or against any materials used in the performance of this Subcontract.

(g) To indemnify the Contractor against the claims of all materialmen and employees of the Subcontractor, including Court costs and attorney's fees incurred in the defense of any litigation instituted by any officer, employee, laborer or materialmen of the Subcontractor, to notify the Contractor is made a party.

(h) To furnish as a condition to obtaining payments hereunder all releases, discharges or other instruments that may be required to release the structure from any and all claims, demands, sales, or whatever kind or nature, arising out of the performance of this Subcontract.

(i) To provide adequate insurance to protect all persons not employed by the Subcontractor against claims for damages for personal injury including death, which may arise out of the performance of this Subcontract by or on account of any act or omission of said Subcontractor, its employees or agents. Certificates of such insurance shall be furnished to the Contractor.

(j) To comply with all laws, orders, or regulations of the Federal, State or Local Government or of any of their respective, subordinate agencies, departments or commissions, applicable to the performance of this Subcontract

(k) That any work done or material furnished failing to meet the requirements of the Plans, Specifications and this Subcontract, will be removed from the premises and replaced by the Subcontractor at his expense.

(l) That no changes from the Plans and Specifications shall be made, and that no extras shall be performed, unless a separate agreement in writing shall have been made before commencement of such work or the furnishing of materials.

(m) To protect and save harmless the said Contractor against any claim or demand or any persons or property for damage caused hereunder, or any claim or demand for patent fees, royalties or for any invention, machine, article or arrangement that may be used by the Subcontractor in the construction of the work, and agrees to defend any and all actions arising out of any of the foregoing claims; to notify the Contractor of all such claims; to defend it, and pay counsel fees and expenses and all kinds whatsoever in connection therewith; and the Subcontractor further agrees that in event of any injunction or legal action, serving to stop work, the Contractor shall have the privilege of substituting such other articles of similar kind in order to enable the Subcontractor to complete the work, and all costs and expense occasioned thereby shall be borne by the Subcontractor.

(n) To notify the Contractor in writing or by shop drawings of any special provisions required of the Contractor for the installation of the work to be done by the Subcontractor that are not shown on the plans and specifications in detail, in sufficient time to allow the Contractor to make these provisions as the project progresses. In the event the Subcontractor fails to so notify the Contractor, it shall be the responsibility of the Subcontractor to bear the expense for all changes required to properly install his work.

(o) Subcontractor shall be responsible for any deviations from the drawings or the specifications, unless the Subcontractor has, in writing, notified the Contractor of such deviations, giving reasons therefore, at the time of submission of preliminary or final shop drawings.

(p) To take all reasonable safety precautions with respect to this Work, to comply with all safety measures initiated by the Contractor and with all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property in accordance with the requirements of the Contract Documents. The Subcontractor shall report to the Contractor immediately any injury to any of the Subcontractor's employees at the site.

(q) That all materials and equipment furnished and incorporated by Subcontractor in the Project shall be new unless otherwise specified, and that all Work under this Subcontract shall be of good quality, free from faults and defects and in conformance with the Contract Documents. All Work not conforming to these standards may be considered defective and will be remedied to the satisfaction of the Contractor with no additional compensation to the Subcontractor. This warranty shall be for the duration of one year after completion of all work and shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents.

(r) Promptly submit shop drawings and samples as required in order to perform his work efficiently, expeditiously and in a manner that will not cause delay in the progress of the Work of the Contractor, General Contractor or other Subcontractors.

(s) To comply with all laws and regulations (local, state and federal) relating to taxes, wages, hours, overtime, record keeping, equal employment opportunity, etc. as they apply to this project, including Title VII of the Civil Rights Act of 1964; Americans with Disabilities Act; Family and Medical Leave Act; Fair Labor Standards Act and all other applicable laws, rules and regulations.

(t) To submit weekly certified payroll reports for all the work performed on this Project, if this project is subject to either Federal or State Prevailing Wage laws. These submissions are subject to approval of the General Contractor and the approved submissions are a condition precedent to receiving progress and/or final payment for the Work of this Subcontract.

(u) To submit a copy of the Subcontractor's safety program and hazard communication plan. These submissions are subject to approval of the General Contractor and the approved submissions are a condition precedent to receiving progress and/or final payment for the Work of this Subcontract.

2

SMUC9002

(v) To provide supervision for the Work to be performed under this Subcontract.
(vi) To provide supervision for the workers needed to complete the Work to be performed under this Subcontract.
(c) To ensure that all workers assigned to the Project by the Subcontractor are in compliance with all laws pertaining or relating to immigration and to protect and save harmless the Contractor from any claim or demand pertaining to violations of any laws pertaining or relating to immigration. Upon request, Subcontractor will provide documentation to the Contractor verifying that all workers assigned to the Project by the Subcontractor are legally eligible to work in the United States.

6. **CONTRACTOR'S RESPONSIBILITIES:** The Contractor agrees:
(a) To be bound to the Subcontractor by the terms of this agreement and of the Contract Documents between the General Contractor and the Contractor and to assume toward the Subcontractor all the obligations and responsibilities that the General Contractor, by these Documents, assumes toward the Contractor, and to have the benefit of all rights, remedies and redress against the Subcontractor which the General Contractor, by those Documents, has against the Contractor, insofar as applicable to this Subcontract, provided that where any provision of the Contract Documents between the General Contractor and the Contractor is inconsistent with any provision in this Agreement, this Agreement shall govern.
(b) To promptly notify the Subcontractor of all modifications to the Contract between the General Contractor and the Contractor which affect this Subcontract and which were issued or entered into subsequent to the execution of this Subcontract.
(c) That no claim for payment for services rendered or materials and equipment furnished by the Contractor to the Subcontractor shall be valid without prior written notice to the Subcontractor.
(d) To coordinate with the Subcontractor in scheduling and performing his Work to attempt to avoid conflicts or interference in the Subcontractor's Work.
(e) To permit the Subcontractor to be present and to submit evidence in any arbitration proceeding involving his rights.

7. **ACCEPTANCE:** The Contractor and the Subcontractor agree that:
(a) In the event the Subcontractor is not acceptable to the General Contractor for any reason whatsoever, the Contractor shall be under no obligation or responsibility to the Subcontractor, and this Subcontract shall become null and void.

8. **TERMINATION FOR FAILURE TO WORK:** Should the Subcontractor fail to prosecute the work to the satisfaction of the Contractor, or should he at any time become insolvent, or refuse to follow the Plans and Specifications, or fail to perform the work in a good and workmanlike manner, or cause by any action the stoppage of the work of other subcontractors performing work upon this property, or fail to comply in any respect with this subcontract; then, upon the happening of the foregoing events, or any one or more of them, the Subcontractor agrees that the Contractor may, by three days written notice mailed to the subcontractor at his last known residence or place of business, or notice delivered at such place, or to the foreperson in charge of the work, terminate this Subcontract and take over the work and prosecute the same to completion by contract or otherwise, and enter into and take possession of the work, materials, tools, appliances and equipment needed to complete such work, and make such payment as the Contractor deems necessary for the discharge in whole or in part of the claims, liens or claims for liens, of any person in privity with the Subcontractor on account of this Subcontract; and the Subcontractor agrees that the expense of such notice and of the completion of such work, and the amount paid for the discharge or payment on account of claims, liens, or claims for liens, and the expense thereof, shall be deducted from the amount due or to become due the Subcontractor, and if more than the amount due, then the Subcontractor shall be liable to the Contractor for the difference, and the Contractor may hold, sell or otherwise realize upon any material, machinery, tools, or other equipment upon the premises on account of such difference in case the Subcontract shall fail or refuse to pay the same; all without prejudice to any other remedy the Contractor may have. If the Subcontractor shall abandon the work, the Contractor shall be under no obligation to give any notice whatsoever prior to taking over the work.

9. **LIENS AND CLAIMS:** The Subcontractor hereby expressly waives, releases and relinquishes any and all right to maintain, or have filed or maintained any mechanic's lien or claim against the aforesaid premises, or any part thereof, or any building or buildings thereon, for or on account of any work, labor and materials performed or furnished under this agreement, and agrees that no such lien or claim shall be so filed or maintained by or on behalf of the Subcontractor; and the Subcontractor further agrees to save the Contractor harmless from the lien or claim for liens against the aforesaid premises or any part thereof, or any buildings thereon, of any subcontractor, or any persons acting through or under the Subcontractor, and agrees, that if at any time there shall be any evidence of the filing or maintenance of any such lien or claim for lien, the Contractor shall have the right to deduct from the amount otherwise due the Subcontractor hereunder, and amount sufficient to indemnify it for any or all loss or damages which may result from such lien or claim; and the Subcontractor further agrees that this waiver shall be an independent covenant, and shall operate and be effective, not only with respect to materials furnished or labor performed under this subcontract, but also with respect to any materials furnished or labor performed under any subcontract supplemental to this principal subcontract, and under any subcontract for extra labor or materials for above described premises.

10. **EXCLUSIVITY:** This Document includes all the agreements between the Contractor and the Subcontractor for the specific Project named herein, and any changes hereto shall be made in writing and executed by both the Contractor and Subcontractor.

Contractor: SMUCKER COMPANY      Subcontractor: Paramount Contracting, Inc.

By: _____      By: _____
Stacey Brandt, Sr Project Manager      Jeff L. Mylin, President

3

SMUC9003

## <u>VERIFICATION</u>

We, Brian D. Zern and Lynette L. Zern, verify that we are the Plaintiff in the foregoing action; that the attached Amended Complaint is based upon information which has been gathered by our counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not ours. We have read the Complaint, and to the extent that it is based upon information which we have given to our counsel, it is true and correct to the best of our knowledge, information and belief. To the extent that the contents of the Complaint are that of counsel, we have relied upon counsel in making this Verification.

We understand that we are subject to the penalties of 18 Pa.C.S. 4904 relating to unsworn falsification to authorities for any false statements that we have made in the foregoing Complaint.


Date: 4-16-2012          _Brian D Zern_
                          BRIAN D. ZERN


Date: 4-16-2012          _Lynette L Zern_
                          LYNETTE L. ZERN


1

## CERTIFICATE OF SERVICE

I hereby certify that on this day I sent a true and correct copy of the foregoing document, Amended Complaint, upon the following persons and in the manner indicated below:

The foregoing document was sent by e-mail and first class mail, postage prepaid to:

Richard A. Godshall, Esquire
Segal, McCambridge, Singer & Mahoney, Ltd.
1818 Market Street
Suite 2600
Philadelphia, PA 19103
(Attorneys for Defendant, Jessup Drywall Services, LLC)

Mark T. Riley, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
620 Freedom Business Center
Suite 300
King of Prussia, PA 19406-1330
(Attorneys for Defendants, Paramount Contracting, Inc. and Smucker Company)

Warren E. Voter, Esquire
Sweeney & Sheenan
1515 Market Street
Nineteenth Floor
Philadelphia, PA 19102
(Attorneys for Defendants, Rodolfo Cardenas d/b/a RC Drywall)

MIKUS LAW ASSOCIATES, P.C.

Date: _4/12/12_          By: _____
                              Kent D. Mikus, Esquire
                              Attorney I.D. No. 23587
                              1623 Lampeter Road
                              Lancaster, PA 17602
                              (717) 464-7480
                              Attorneys for Plaintiffs

22